5 September 2000

No. 2--99--1177 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

In re
 MARRIAGE OF ) Appeal from the Circuit Court

PATRICIA ANN SWEET,   ) of Stephenson County.

n/k/a Patricia Ann Chriss,      )

)

     Petitioner-Appellee,  ) No. 87--D--68   

                                )

and )

                                )

ROBERT JAMES SWEET,       ) Honorable

                                )  Barry R. Anderson,

     Respondent-Appellant.      )  Judge Presiding.

JUSTICE McLAREN delivered the opinion of the court:

Respondent, Robert James Sweet, appeals the circuit court's order that increased to $170 per week his child support obligation to petitioner, Patricia Ann Sweet, now known as Patricia Ann Chriss.  Respondent contends that (1) the trial court violated his constitutional right to pursue his chosen profession by ordering him to find other employment; (2) the court erred in modifying child support in the absence of evidence of changed circumstances; (3) the court abused its discretion in ordering a fully employed child support obligor to seek other employment; (4) the court failed to state its reasons for deviating from the statutory guidelines; and (5) the court abused its discretion in making the increase retroactive to the date the petition was filed.

The parties were married in 1979.  They had two children together, Adam, born in 1981, and Amy, born in 1984.  The circuit court dissolved their marriage in 1988.  A settlement agreement incorporated into the judgment awarded petitioner custody of the children and required respondent to pay $75 weekly as child support.  The parties later agreed to two increases in child support so that when the present petition was filed respondent was paying $96 per week.

Both parties have since remarried.  At the time of the dissolution, respondent was employed as an exterminator with his take-home pay averaging $1,250 per month.  Petitioner was and is a self-employed child-care provider.  In 1992, respondent started his own exterminating business.  In 1998, he purchased a new, $28,000 truck for his business. According to his 1998 tax return, the enterprise had gross receipts of $28,685 and earned a net profit of $11,187.  Among the deductions was $4,279 for depreciation, which respondent testified was for the truck.  In 1997, the business earned a net profit of $8,352.  Respondent admitted filling out a loan application in which he stated that his monthly net income was $3,600.  He stated that he did so in order to qualify for a lower interest rate.

In January 1999, petitioner filed a petition to increase child support.  At the hearing, petitioner testified that the children's expenses had increased.  Specifically, she was paying for car insurance for Adam, the children ate more, their clothes cost more, and they had additional expenses for social activities and optical and dental services.

At the conclusion of the initial hearing, the court questioned respondent's credibility because he had admittedly misstated his income in a loan application.  The court continued as follows:

"He reports an income of $11,187.  There are winos and bustouts that appear in this court on Thursday morning that make that kind of money and they get hired, not that you're in that category.  But, however, there is no reason that these children should suffer while you drive around in a new truck at a deadend job."

The court took petitioner's petition under advisement, temporarily continuing respondent's child support obligation at $96 per week.  The court continued the matter until July 15 and ordered respondent to apply for employment with at least 10 firms.  The court stated as follows:

"A man of your health and your stature and your ability can certainly make more in today's labor market than $11,000 a year but I'm not going to sit here and have your children suffer because you choose to become involved in such an enterprise that produces so little."

The court denied respondent's motion to reconsider or clarify its order, stating:

"If he wants to have a deadend job that's fine but I'm going to set the support commensurate with his ability.  You know, he wants to have a hobby farm going around and spraying roaches for eight hundred bucks a month that's his right, but he's not going to do it at the expenses [
sic
] of his children."

On July 15, respondent reported that he had not conducted a job search.  Petitioner's attorney argued that respondent's support obligation should be based on the income he listed in his loan application.  Counsel argued that the guideline amount--25% of net income for two children--applied to the $3,000 (actually $3,600) monthly income listed in the loan application was approximately $170 per week.  Respondent's attorney replied that the court had already found respondent's income to be as stated in his tax returns.

The court stated:

"Well, as I recall it was not necessarily a finding that his income was as he stated.  It was a finding that he either lied in court or lied on a loan application, either one of which is a felony under the laws of the State of Illinois.  Further by his own testimony he indicated that he bought a brand new truck to ride around town performing a deadend business that nobody wanted to pay for and that he only according to his testimony netted about nine grand a year.  And under the circumstances I advised the defendant [
sic
] that I didn't think that his children should bear the brunt of his new truck so that he could ride around doing nothing. *** As far as I'm concerned we have an individual here that is either misrepresenting his income or willfully refuses to go to work and support his children even though he is able to do so."

The court increased respondent's child support obligation to $170 retroactive to the date the petition was filed.  Respondent perfected this appeal.

Respondent first contends that the court violated his constitutional right to pursue the career of his choice.  This argument is easily disposed of because the court did no such thing.  The court specifically stated that if respondent wants to continue working as an exterminator "that's fine" and "that's his right."  The court merely required respondent to pay a greater amount of child support.  Respondent may be able to pay this additional amount because his income is actually higher than what he reported for tax purposes.  He may be able to pay an additional amount by working more diligently at his current job, by supplementing his income with part-time work, by cutting expenses elsewhere, by using savings, or by winning the lottery.  All of these options would permit respondent to meet his child support obligation without abandoning his chosen career.  Thus, the cases respondent cites, dealing with an expectancy of future employment, simply do not apply.

Respondent next contends that there was no evidence of changed circumstances to justify an increase in child support.  A child support judgment can be modified only upon a showing of a substantial change in circumstances.  
In re Marriage of Pylawka
, 277 Ill. App. 3d 728, 731 (1996); 
In re Marriage of Stockton
, 169 Ill. App. 3d 318, 325 (1988).  The party seeking the modification must show both a change in the children's needs and in the noncustodial parent's ability to pay.  
Pylawka
, 277 Ill. App. 3d at 731; 
Dull v. Dull
, 73 Ill. App. 3d 1015, 1019 (1979).  The setting or modification of child support is within the trial court's discretion and will not be reversed absent an abuse of that discretion.  
In re Marriage of Mitteer
, 241 Ill. App. 3d 217, 227 (1993).

Respondent admits that his earnings have increased every year since he started his business.  His tax returns show that the business netted more money in 1998 than in previous years.  Therefore, the first element of changed circumstances is satisfied.  Moreover, an increase in children's needs can be presumed on the basis that they have grown older and the cost of living has risen.  
Pylawka
, 277 Ill. App. 3d at 731.  Here, petitioner testified that the children's expenses had increased since the most recent modification of the child support order.  Specifically, she said that the children ate more, their clothes cost more, and they had additional expenses for social activities.  Contrary to respondent's argument, petitioner was not required to list specific dollar amounts for each expense item.  Evidence existed for the court to conclude that there had been a substantial change of circumstances.

Respondent's third contention is that the trial court lacked the authority to order him to seek other employment.  He complains that the court could not order him to conduct a job search.  This issue is essentially moot because the court never attempted to enforce its order that respondent apply to 10 companies.  When respondent simply ignored the job-search requirement, the court did not hold him in contempt or undertake any other coercive measure.  Thus, respondent may not complain about this order.  See 
In re Marriage of Ruchala
, 208 Ill. App. 3d 971, 977 (1991) (contempt order not final and appealable until court imposes sanction).

Respondent contends, however, that although the court did not seek to enforce the job-search order, the court continued with that line of thinking by raising child support to a level commensurate with the income the court thought respondent should be making.  Respondent argues that the court could not coerce him into looking for another job merely because it disapproved of his chosen field of endeavor.  We disagree.  Although we have found no Illinois case precisely on point, courts' authority to compel parties to family law proceedings to seek more lucrative employment, or to pay support at a level as if they had done so, is well established.

A party seeking to decrease his or her child support obligation based on a voluntary change in employment must demonstrate that the action was taken in good faith and not to evade financial responsibility to his or her children.  
In re Marriage of Maczko
, 263 Ill. App. 3d 991, 994 (1992); 
Mitteer
, 241 Ill. App. 3d at 227.  Absent good faith, the voluntary termination of employment does not warrant an abatement of child support.  
In re Marriage of Dall
, 212 Ill. App. 3d 85, 95-96 (1991).

In a similar vein, a party seeking maintenance has an affirmative obligation to seek suitable employment.  
In re Marriage of Dunseth
, 260 Ill. App. 3d 816, 833 (1994).  In 
In re Marriage of Cantrell
, 314 Ill. App. 3d 623 (2000), this court reversed the trial court's order continuing petitioner's maintenance, holding that petitioner had not taken sufficient steps to become self-

sufficient.  Since the dissolution, petitioner had worked as a free-lance photographer and graphic artist but had lost money every year.  
Cantrell
, 314 Ill. App. 3d at 626.  The court noted that petitioner had a bachelor's degree, was employable, and had no apparent health impairments that might prevent her from working.  
Cantrell
, 314 Ill. App. 3d at 630.

Similarly, in 
In re Marriage of Schuster
, 224 Ill. App. 3d 958 (1992), the husband had worked as an engineer and an attorney.  He left the latter employment to become a commodities trader but after two years had not made any money.  This court affirmed the trial court's denial of the husband's request for maintenance, noting that "[r]egardless of whether he enjoyed it or not," respondent had been able to work consistently.  
Schuster
, 224 Ill. App. 3d at 971.

Cases from other jurisdictions have held that a court may impute additional income to a child support obligor who is voluntarily underemployed.  Most nearly on point is 
In re Marriage of Resch
, 381 N.W.2d 460 (Minn. App. 1986).  There, the husband had been a machinist but quit because of the stress and worked as a self-employed carpenter.  He testified he would have no trouble finding a job as a machinist at $13 per hour.  The court held it was proper to look beyond the husband's actual earnings to his earning capacity and "to disregard any inability to pay which is voluntary on the part of the obligor."  
Resch
, 381 N.W.2d at 462, citing 
Hopp v. Hopp
, 279 Minn. 170, 175-77, 156 N.W.2d 212, 217-18 (1968).  The court went on to state:

"A trial court cannot direct a person to work at a specific job against his will.  That does not prohibit it, however, from directing a person to pay support commensurate with a wage he could earn if he sought employment in an occupation for which he is trained and has the present ability to perform."  
Resch
, 381 N.W.2d at 462.

In 
In re Marriage of McCord
, 910 P.2d 85, 89 (Colo. App. 1995), the court held that if a parent is voluntarily underemployed, child support should be based on his or her potential income.  See also 
In re Marriage of Marshall
, 781 P.2d 177, 179 (Colo. App. 1989); 
Barac v. Barac
, 684 S.W.2d 869, 870-71 (Mo. App. 1984); 
In re Marriage of Curran
, 26 Wash. App. 108, 110-11, 611 P.2d 1350, 1351 (1980).

All of these cases refute respondent's implicit contention that the trial court is powerless to set child support based on an amount beyond his actual current income.  Rather, if a court finds that a party is not making a good-faith effort to earn sufficient income, the court may set or continue that party's support obligation at a higher level appropriate to the party's skills and experience.

Here, respondent testified during the original dissolution proceedings that he worked for an exterminating company.  He testified that his take-home pay averaged $1,250 a month.  This equates to $15,000 yearly, or more than respondent claims to have made during any year since he became self-employed.  Merely adjusting for inflation shows that respondent is capable of making considerably more than he now claims to be earning.

The trial court's comments, which we have quoted extensively above, make abundantly clear that the court found that respondent was not acting in good faith.  The court strongly suggested that respondent was more interested in being his own boss and in buying a new truck for himself than in supporting his children.

While a party's desire to remain self-employed is not insignificant, the above cases show that the interests of the other spouse and the children may sometimes take precedence.  The spouses in 
Resch
, 
Cantrell
, and 
Schuster
 may well have been forced to give up their self-employment and go to work for someone else.  Of course, the spouses in 
Cantrell
 and 
Schuster
 were affirmatively seeking maintenance, while respondent has had an obligation thrust upon him.  However, this case is similar to those cited in that respondent is asking his ex-wife to shoulder a disproportionate share of the burden of supporting the parties' children so that respondent can remain self-employed.  Supporting a child is the joint responsibility of both parents.  
In re Marriage of Rogliano
, 198 Ill. App. 3d 404, 413 (1990).  Respondent may not ask petitioner to work harder so that he can enjoy the benefits of self-employment.

The only case respondent cites for the contention that the court lacked the authority to compel him to seek other employment is readily distinguishable.  In 
In re Marriage of Page
, 162 Ill. App. 3d 515 (1987), this court held that the court erred in ordering the respondent-husband to apply for jobs where, although he was behind in child support, no petition for a rule to show cause was pending, the court had already found that his failure to pay was not wilful, and it appeared that the husband was working at least part-time.  
Page
, 162 Ill. App. 3d at 519.  Here, the court did not enforce its order that respondent apply to 10 companies but merely set child support at a figure it thought was reasonable.

Respondent next contends that the court failed to state its reasons for deviating from the statutory guidelines.  The Illinois Marriage and Dissolution of Marriage Act (the Act) provides a presumption that a stated percentage of the noncustodial parent's income is an appropriate level of child support.  The guideline amount for two children is 25% of the payor spouse's net income.  750 ILCS 5/505(a)(1) (West 1998).  The court is to apply the guideline amount unless it finds that the application of the guidelines is inappropriate after considering various factors, including the children's needs and resources, the needs and resources of both parents, and the standard of living the children would have enjoyed had the marriage not been dissolved.  750 ILCS 5/505(a)(2) (West 1998).  The statutory guidelines also apply to modifications of child support.  
Stockton
, 169 Ill. App. 3d at 326.

The court must make express findings if it deviates from the guidelines.  
Pylawka
, 277 Ill. App. 3d at 731-32; 
In re Marriage of Morgan
, 219 Ill. App. 3d 973, 974 (1991).  However, the requirement of express findings does not mean that the findings must be written or incorporated into the court's order.  
In re Marriage of Burris
, 263 Ill. App. 3d 495, 499 (1994).  The court's oral comments may satisfy the requirement of specific findings.  
In re Marriage of Minear
, 287 Ill. App. 3d 1073, 1080 (1997), 
aff'd
, 181 Ill. 2d 552 (1998).

Here, the court's comments show the reasons for its decision.  The court stated its belief that respondent was not making as much money as he was capable of making.  Also, respondent had bought a new truck that was not justified by any business necessity.

Additionally, the court strongly implied that respondent was not being truthful about his income.  The court referred to respondent's loan application in which he stated his income was $3,600 per month.  Also, respondent testified that his net income in 1998 was approximately $11,000.  He said that his wife earned an additional $2,600.  His financial affidavit listed expenses of $2,200 per month, or approximately $26,000 per year.  Yet respondent stated that he and his wife were able to meet their monthly expenses with no shortfall.  There was thus reason for the court to be skeptical of respondent's testimony.

In determining net income, the court may consider the party's credibility and forthrightness in disclosing his or her income.  
In re Marriage of Karonis
, 296 Ill. App. 3d 86, 92 (1998).  If the court is unable to determine the support obligor's income, it can award an amount that is reasonable under the circumstances.  
In re Marriage of Takata
, 304 Ill. App. 3d 85, 96 (1999); 750 ILCS 5/505(a)(5) (West 1998).

Because respondent's income was difficult to determine, the court was justified in eschewing the strict application of the statutory guidelines and setting support in a reasonable amount.  In this context, we note that respondent's argument is based on a net income of about $11,000.  His tax returns show gross receipts of $28,000 in 1998.  Respondent's deductions included some that are not proper under the Act.

The Act contains a definition of "net income."  See 750 ILCS 5/505(a)(3) (West 1998).  That definition, rather than the Internal Revenue Code, controls the determination of income for child support purposes.  
In re Marriage of Davis
, 287 Ill. App. 3d 846, 852 (1997).  Respondent's tax return included an unexplained deduction of more than $4,000 for depreciation on his truck.  An unexplained depreciation deduction need not be considered in determining a party's available income.  
In re Marriage of Minear
, 181 Ill. 2d 552, 560 (1998).  Although the deduction may have been proper for tax purposes, it represents additional funds available to respondent.  Thus, even accepting his testimony at face value, his actual disposable income is higher than indicated.

Respondent finally argues that the court abused its discretion in making the increase retroactive to the date the petition was filed.  Section 510(a) of the Act (750 ILCS 5/510(a) (West 1998)) provides that the trial court may retroactively modify a child support award to the date of the filing of the petition to modify.  
In re Marriage of Boland
, 308 Ill. App. 3d 1063, 1067 (1999).  The record here reveals no abuse of discretion.  Although respondent complains that petitioner's delay in responding to discovery slowed the proceedings, he does not explain how this prejudiced him.  Respondent does not contend that he did not receive notice of the petition within a short time after it was filed.  The proceedings were continued numerous times and the record does not show the reason for the delay.  Under the circumstances, we cannot find that the court abused its discretion in making the increase retroactive to the date the petition was filed.

The judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

BOWMAN, P.J., and HUTCHINSON, J., concur.