*In re* MARRIAGE OF GREGORY GOSNEY, Petitioner-Appellant, and MARGARET GOSNEY, n/k/a Margaret Finnegan, Respondent-Appellee.

Third District   No. 3—08—0718

Opinion filed October 13, 2009.

Howard J. Levine, of Levine, Wittenberg & Shugan, of Tinley Park, and Joel Ostrow (argued), of Bannockburn, for appellant.

Gregory Jumbeck (argued), of Reich, Orloff & Jumbeck, L.L.P., of Joliet, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Petitioner Gregory Gosney appeals from an order of the circuit court requiring him to pay $5,000 per month in child support based on an imputed gross income of $350,000. We reverse and remand for further proceedings.

Gregory and Margaret Gosney were married in 1992 and divorced in April of 2002. They had two children, Andrew, born in October of

1994, and Patrick, born in April of 1996. Under the terms of the settlement agreement, Gregory agreed to pay an unallocated amount of $10,000 per month to Margaret for maintenance and child support. In May of 2004, the trial court allocated the payments under the agreement and reduced the amounts to $1,083 in maintenance and $2,396 in child support. On September 9, 2004, the court entered an order adjusting child support to $2,489 per month.

Between April 2006 and April 2007, Gregory voluntarily increased his child support payment to $5,300 per month based on a substantial increase in his income. In April 2007, he returned to the previous support amount of $2,489.

On April 30, 2007, Gregory filed a petition to reduce and/or abate child support, claiming that he was paying support pursuant to the 2004 order but a substantial change in circumstances had occurred. Specifically, he alleged that he had been terminated from his employment at Dearborn Partners, an investment management firm, and had no income. Margaret filed a petition to set child support, arguing that Gregory had become reemployed, making substantial sums, and the children were entitled to support in the amount set by statutory guidelines. Gregory answered her petition and denied that he was making any income. In January 2008, Margaret filed a response to Gregory's petition to modify support, alleging that Gregory voluntarily terminated his employment with Dearborn and received $300,000 in severance pay.

Both parties submitted financial affidavits for 2008. Margaret's affidavit listed the monthly expenses for herself and her two children as $3,753 and her income for 2007 as $960. Gregory approximated his monthly expenses at $8,526 and stated that his gross income in 2007 was $340,000. The affidavit listed his 2008 employer as "Investment Consulting Services, LLC," and stated that he had no current income.

A trial on the issue of child support began on March 8, 2008. Gregory testified that he had been employed from July 2003 to April 2007 with Dearborn. At Dearborn, it was Gregory's responsibility to bring in union pension fund clients. His area of expertise was in solicitation; he "wined and dined" potential clients. He did not actually manage the investment funds. According to his tax returns, Gregory's total income from Dearborn for the last three years was $185,989 in 2004, $414,332 in 2005, and $755,497 in 2006.

In January of 2007, some of the partners in the Dearborn firm wanted to sell the company. Gregory and two other partners tried to buy out their shares, but negotiations indicated it would cost approximately $800,000 per shareholder. Gregory declined and offered to work for the company for definitive compensation only. Three weeks

later, he received a phone call terminating his employment. He negotiated a severance payment and used the funds to pay back a margin loan he had taken to originally purchase his Dearborn interest. From January 2007 until his termination in April 2007, Gregory earned an income of $341,000.

Gregory testified that after leaving Dearborn, he sent out at least 12 resumes. He contacted several of his friends in the industry and asked them to keep him in mind if a position became available. He also gave his resume to a "headhunter" to help him find new employment. Gregory had two interviews with large investment firms but did not receive an offer. Gregory testified that throughout his financial career he has dealt almost exclusively with union pension funds. In his own words, he was a "deal maker." He used his contacts to court unions and encouraged them to move their pension investment funds to his marketing management firm. He had a small area of expertise and, after leaving Dearborn, was unable to find employment with another management firm.

As a result, Gregory started a limited liability company in May 2007 and attempted to move his former clients from Dearborn. At that time, he discovered that Dearborn had a noncompete agreement with the unions and managers of the pension funds, which precluded the unions from moving their investment business to another firm. Because of the agreement, Gregory was unable to establish a successful business.

In October 2007, Gregory began employment with Investment Consulting Services (ICS), an investment management company owned by his wife, Sandra Wendling, whom he married in October 2006. Wendling has been in the investment industry for more than 20 years and has owned and operated ICS for a number of years. Gregory's job with ICS is similar to his employment with Dearborn; he solicits pension fund clients. However, his clients pay a set consulting fee rather than a "sliding fee" because ICS does not actually manage the funds. Gregory testified that given new government regulations and the use of hedge funds, the potential client pool had diminished significantly. He further explained that new laws have now criminalized some of the contact and entertainment methods investment firms previously utilized to entice union businesses. As of the date of trial, Gregory had secured two unions and was in the process of soliciting others. Based on those two clients, he estimated he would earn approximately $110,000 in 2008.[1]

---

[1] At oral argument, counsel clarified that Gregory claimed an income of $110,000 after overhead expenses.

Wendling stated that ICS is solely a "hard fee" business and that Gregory was essentially building his own practice. She stated that based on the two clients Gregory brought in he should earn $110,000 through January 2009. She and Gregory do not have a written business agreement. Rather than giving Gregory a monthly pay check, Wendling pays the monthly business expenses as an advance against his income.

Margaret testified that after the 2004 support order, Gregory requested that he no longer be obligated to provide his quarterly pay stubs to her. Gregory only advised her of his 2005 income once, in March of 2005. Gregory failed to promptly advise her of his 2006 income. In October 2006, Margaret subpoenaed Dearborn, seeking the production of all records relating to Gregory's earned income, compensation and distributions for the years 2004, 2005, and 2006. She admitted that Gregory started paying her $5,300 in monthly child support in April of 2006. She had not discussed the increase with him prior to that time. Margaret also testified that Gregory was actively involved with the children and that she considered him "a good father."

The trial court entered an order on July 8, 2008, finding that Gregory's Dearborn termination was "in good faith and forced." However, the court concluded that Gregory could earn more than $110,000. The court declined to income average and imputed a gross income of $350,000. After both parties submitted calculations, the trial court entered an order setting child support at $5,000 per month.[2]

## ANALYSIS

Gregory contends that the trial court abused its discretion by imputing a gross annual income of $350,000 for the purpose of determining child support.

A child support judgment can be modified only upon a showing of a substantial change in circumstances. *In re Marriage of Sweet*, 316 Ill. App. 3d 101 (2000). Economic reversals as a result of change in employment or bad investments, if made in good faith, may constitute a material change in circumstances sufficient to warrant modification of a child support order. *In re Marriage of Burbridge*, 317 Ill. App. 3d 190 (2000). In determining whether such a change in circumstances of the noncustodial parent is made in good faith, the crucial consideration is whether the change was prompted by a desire to evade financial

[2]The court reached this amount by reducing Gregory's imputed gross income to an adjusted net income of $214,285 and then determining monthly support payments based on statutory guidelines (750 ILCS 5/505(a)(1) (West 2006) (28% of the noncustodial parent's net income)).

responsibility for supporting the children or otherwise jeopardize their interests. *In re Marriage of Schuster*, 224 Ill. App. 3d 958 (1992).

Here, the trial court found that Gregory established a change in circumstances, and Margaret does not challenge that finding. The issue on appeal is whether the trial court erred by imputing an income of $350,000 based on Gregory's earning potential.

Once a change in circumstances has been established, the court must set child support payments based on relevant statutory factors. 750 ILCS 5/505(a)(1), (a)(2) (West 2006). In reaching the proper amount of child support, the court must first determine the noncustodial parent's net income. 750 ILCS 5/505(a)(1) (West 2006). In many cases, net income may be difficult to ascertain and an impediment to determining an award of support. It is well established that courts have the authority to compel parties to pay child support at a level commensurate with their earning potential. *Sweet*, 316 Ill. App. 3d at 107. If present income is uncertain, a court may impute income to the payor. *Sweet*, 316 Ill. App. 3d at 107.

■ The imputation of income arose in response to noncustodial parents who experienced a reduction in income and sought a corresponding decrease in child support. When the custodial parent questioned the motives of the payor, courts answered by imputing income when appropriate. *In re Marriage of Hardy*, 191 Ill. App. 3d 685 (1989); *Jensen v. Jensen*, 877 S.W.2d 131 (Mo. App. 1994). Illinois appellate courts have developed three primary factors to consider in determining when it is proper to impute income to a noncustodial parent. In order to impute income, a court must find that one of the following factors applies: (1) the payor is voluntarily unemployed (*In re Marriage of Adams*, 348 Ill. App. 3d 340 (2004)); (2) the payor is attempting to evade a support obligation (*Sweet*, 316 Ill. App. 3d 101); or (3) the payor has unreasonably failed to take advantage of an employment opportunity (*In re Marriage of Hubbs*, 363 Ill. App. 3d 696 (2006)). If none of these factors are in evidence, the court may not impute income to the noncustodial parent. The determination of net income is reviewed under an abuse of discretion standard. *In re Marriage of Rogers*, 213 Ill. 2d 129 (2004).

■ Applying these three factors, we find the trial court's decision to impute income in addition to Gregory's current income was an abuse of discretion. First, this is not a case in which the noncustodial parent was voluntarily unemployed. In *Adams*, the payor father quit his job and moved to Germany to live with his girlfriend without first obtaining employment. The court imputed income based on findings that the father was voluntarily unemployed and his prior income reflected his earning potential. *Adams*, 348 Ill. App. 3d at 344.

Here, the trial court found that Gregory was involuntarily unemployed, and the evidence supports that conclusion. Gregory testified that he was forced out of the company by Dearborn's unfair and oppressive negotiation tactics and was asked to leave the firm when he failed to agree to the terms. Gregory was terminated and, within months, found another position in the financial management industry. He did not willingly decide to leave his job and then remain unemployed.

Second, nothing in the record suggests an attempt to evade a support obligation. In *Sweet*, the court imputed income to the noncustodial parent, noting that the payor's self-employment produced little income, and he either misrepresented his income or willfully refused to support his children. The reviewing court concluded that without a good-faith effort to satisfy his support obligation, additional income was properly imputed based on the payor's earning potential. *Sweet*, 316 Ill. App. 3d at 107-08.

In this case, immediately after Gregory lost his job, he began searching for new employment. Once those efforts proved fruitless, he started his own investment company in an attempt to quickly generate income. When self-employment was unsuccessful, he joined his wife's financial firm and utilized his training and expertise to earn a living. Gregory never neglected to pay child support under the 2004 order. He faithfully honored his obligation to support his children, even increasing his payments on his own accord in 2006 when his income substantially increased. He was not attempting to evade his support obligation.

Third, there is no evidence of an unreasonable failure to take advantage of an employment opportunity. In *Hubbs*, the appellate court upheld an imputed income of $115,000 because the noncustodial parent's income for the previous three years was $133,000, $114,000, and $169,319 and he recently rejected a job that would have paid him $120,000 per year. *Hubbs*, 363 Ill. App. 3d at 706-07.

Unlike the payor in *Hubbs*, Gregory was not offered a position that would have paid him an annual salary of $350,000. He specifically testified that positions in his area of experience were not easy to find given recent revisions in the law and noncompete agreements. He also testified that it is difficult to generate a significant income from a client due to new solicitation regulations involving union pension funds. At the time of trial, Gregory had no employment opportunity that would have produced an income in the range imputed by the trial court. Indeed, there is no evidence that a job of that income was available to someone of Gregory's experience in 2008.

## CONCLUSION

█ Thus, the trial court erred in concluding that Gregory could have earned a salary similar to the income he previously generated. In light of Gregory's involuntary termination, his prior efforts to support his children, and his unsuccessful attempts to find comparable employment, the trial court's decision to impute a gross income of $350,000 to Gregory was an abuse of discretion. We therefore reverse the support award and remand with instructions to redetermine Gregory's child support obligation consistent with the views expressed in this court's opinion.

The judgment of the circuit court of Will County is reversed and remanded for further proceedings.

Reversed and remanded.

O'BRIEN, P.J., and HOLDRIDGE, J., concur.