2019 IL App (1st) 181908-U

No. 1-18-1908

Third Division
November 6, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| McSTEPHEN SOLOMON, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | No. 09 D6 31067 |
| v. | ) | |
| | ) | Honorable |
| CHARITY SOLOMON, | ) | Sharon O. Johnson, Judge, presiding. |
| Defendant-Appellee. | ) | |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Ellis and Justice Howse concurred in the judgment.

**O R D E R**

¶ 1     *Held*: Defendant's motion to dismiss plaintiff's claim relating to the trial court's order of contempt is granted due to lack of jurisdiction. Plaintiff's claim relating to the trial court's order compelling him to seek employment is also dismissed for lack of jurisdiction. The trial court is affirmed where it did not abuse its discretion in imputing income to plaintiff in its modification of child support.

¶ 2     This appeal stems from an action dissolving the marriage of petitioner-appellant, McStephen Solomon, and respondent-appellant, Charity Solomon. Charity filed a petition to modify the child support order entered at the time of dissolution. McStephen now appeals

*pro se* from the trial court's orders holding him in contempt, compelling him to seek employment, and modifying the child support order. On appeal, he argues that the trial court: (1) improperly found him in indirect civil contempt; (2) erred in granting Charity's motion to compel employment; and (3) improperly imputed income to McStephen in modifying child support. For the following reasons, we affirm.

¶ 3                                 I. BACKGROUND

¶ 4        On June 30, 2011, a judgment of dissolution of McStephen and Charity's marriage was entered. The parties have one child together, and McStephen's child support obligation was set in that judgment at $117.50 per month.

¶ 5        On December 13, 2016, Charity filed a petition to modify the child support order contained in the judgment. She alleged that a significant change in circumstances had occurred in that McStephen completed law school, is employed and earning income, and the child's expenses had increased.

¶ 6        On January 9, 2017, the trial court ordered that the parties exchange financial affidavits within 28 days and that McStephen tender copies of his last two years of federal and state income tax returns and his recent paychecks. On March 23, 2017, Charity tendered her financial affidavit and accompanying documents. On March 27, 2017, Charity filed a petition for rule to show cause for indirect civil contempt based on McStephen's failure to tender his financial information as ordered by the trial court. McStephen tendered his financial affidavit on March 31, 2017.

¶ 7        On April 13, 2017, Charity filed a motion to compel employment, alleging that despite his education, McStephen is "substantially underemployed, not working full-time, and *** he is not working at all." She also requested that the court order McStephen to submit a monthly

job diary. McStephen's financial affidavit, which Charity attached as an exhibit, stated that he teaches at South Suburban College as an adjunct professor but due to personal reasons he did not teach during the Spring 2017 semester. The court continued Charity's motion to compel employment to April 24, 2017 and granted McStephen 21 days to respond.

¶ 8        On that same day, the court ordered McStephen to show cause as to why he should not be held in contempt for failure to provide Charity with the required financial documents in accordance with the January 9, 2017 order.

¶ 9        On April 24, 2017, a hearing was conducted on Charity's petition for rule to show cause. The court found McStephen to be in contempt of court, noting that McStephen's failure to comply with the January 9, 2017 order was "willful and contumacious." However, the court also noted that McStephen "purged said contempt."

¶ 10       On April 26, 2017, McStephen moved the court to reconsider its April 24, 2017 order. On April 27, 2017, McStephen filed a motion to dismiss Charity's petition for modification of child support. Charity filed responses to both motions.

¶ 11       On May 9, 2017, McStephen filed his response to Charity's motion to compel employment. He claimed in that motion that he was currently employed and attached a letter from South Suburban College, stating that he has been employed as an adjunct professor since August 2013.

¶ 12       On May 18, 2017, Charity requested, and the court later granted, attorney's fees and costs associated with the court's earlier finding of contempt. The judgment against McStephen was in the amount of $1,516.25.

¶ 13       On June 30, 2017, the court held a hearing on Charity's motion to compel employment. McStephen testified that he obtained his undergraduate degree from DePaul University in

2007, his juris doctor from Valparaiso University in May 2012, and a master's degree in theology also from Valparaiso University in 2013. He stated that he was employed at South Suburban College as an adjunct professor, which was not a full-time position. He stated that he was not currently teaching because he was running a campaign for mayor and the last semester he taught was Fall 2016. He further testified that since January 2017 he had not received any money from teaching and had been living on loans and assistance from family. He also stated that he still serves on several committees at the college and has various administrative work and he is scheduled to teach in the fall.

¶ 14     The court found that McStephen was "willfully underemployed" and had sufficient education and experience to be employed full-time. The court ordered that he obtain full-time employment and maintain a job search diary. The court also stated that "[r]unning for office is not an application for a job for purposes of the payment of child support because it's too speculative."

¶ 15     On October 2, 2017, the court conducted a hearing on McStephen's motion to reconsider the April 24, 2017 order. The court denied that motion and ordered the parties to exchange updated financial information for the previous six months.

¶ 16     The hearing on Charity's petition to modify child support began on April 30, 2018 and was continued to July 13, 2018. On July 11, 2018, Charity filed a motion for the admission of evidence. Specifically, she requested that the court admit web pages from the United States Bureau of Labor Statistics regarding the annual mean wage for lawyers in Kankakee and Chicago, Illinois. McStephen responded to that motion, and the trial court later granted the motion. The hearing was again continued to August 28, 2018, at which time the parties presented closing arguments.

¶ 17    The trial exhibits admitted during these proceedings were included in the common law record. Charity's 2017 tax return listed her yearly earnings as $18,431.20, and her financial affidavit listed her monthly income as $1,541.52. According to McStephen's financial affidavit, his gross income as of October 31, 2017 was $14,000. He listed his gross income from 2016 as $9,685. His monthly income was listed as $1,400 from regular employment earnings. His 2017 tax return listed his business income as $2,714. His 2016 tax return listed his income as $9,685 with his occupation stated as adjunct instructor. There is also a document showing that McStephen is an active licensed attorney in Illinois.

¶ 18    Also included are several web pages from the United States Bureau of Labor Statistics regarding the wage statistics for lawyers. The annual mean wage for a lawyer in Kankakee, Illinois is listed as $85,720 and for a lawyer in Chicago-Naperville-Elgin, IL-IN-WI is listed as $134,570. Finally, there are several different Illinois Child Support Guideline Calculation worksheets with each listing a different monthly salary for McStephen. These were generated on April 29, 2018.

¶ 19    The court granted Charity's motion to modify child support, finding that there had been a substantial change in circumstances. The court found that McStephen graduated from law school in 2012 and had not worked full-time as an attorney since graduation, but he had unsuccessfully campaigned for Hazel Crest Village President, Illinois State Senate, Illinois State Representative, School Board 144, library trustee, and South Suburban College School Board. Finally, the court found that McStephen is the registered agent for Citizens For Hazel Crest, Inc. and he has provided *pro bono* legal services on its behalf. The court found that Charity was employed as a registered nurse with a monthly income of $1,578.83.

¶ 20    The court found that McStephen had extensive education and experience, rendering him "woefully underemployed." The court imputed income to him in the amount of $42,860 annually, or $3,571.67 per month ($2,788 net), stating that this was half the annual mean wage for lawyers in Kankakee. The court found this amount appropriate because McStephen has not practiced law on a consistent basis since 2012. Finally, based on the Illinois Child Support Guideline Calculation, the court ordered McStephen to pay child support in the amount of $572 per month and made the child support obligation retroactive to December 13, 2016.

¶ 21    McStephen filed a notice of appeal on September 4, 2018, which stated that he was appealing from the order entered on August 28, 2018.

¶ 22    On April 8, 2019, Charity filed a motion to dismiss in this court. The motion solely related to the first issue addressed in McStephen's brief, the trial court's civil contempt finding. We entered an order taking the motion with the case, and we now address the merits of the motion below.

¶ 23                              II. ANALYSIS

¶ 24    On appeal, McStephen raises three claims of error: (1) the trial court erred in finding him in indirect civil contempt; (2) the trial court erred in granting Charity's motion to compel employment; and (3) the trial court improperly imputed income to him when it modified child support.

¶ 25                         A. Order Finding Contempt

¶ 26    Before considering McStephen's claimed error regarding the court's contempt finding, we must first address Charity's motion to dismiss this issue. Charity argues that this court does not have jurisdiction over the trial court's order finding McStephen in indirect civil

contempt because McStephen did not include that order in his notice of appeal. It is true that the order is not specifically mentioned in the notice of appeal, but McStephen argues that it was part of the "procedural progression" leading up to the order from which he appeals.

¶ 27    Under Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017), an appellant must "specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." If the notice of appeal is not properly filed, this court must dismiss the appeal for lack of jurisdiction. *Clark v. Gannett Co., Inc.*, 2018 IL App (1st) 172041, ¶ 54. But, a notice of appeal is to be liberally construed. *People ex rel. Burris v. Marivglia*, 264 Ill. App. 3d 392, 397 (1993); *Longo v. Globe Auto Recycling, Inc.*, 318 Ill. App. 3d 1028, 1035 (2001). "An unspecified judgment may be reviewed if it directly relates to the judgment or order sought to be reviewed [Citations] or is a step in the procedural progression leading to the judgment specified in the notice of appeal. [Citations]." *People ex rel. Burris*, 264 Ill. App. 3d at 398. Additionally, "[t]he purpose of the notice of appeal is to inform the prevailing party that the other party seeks review of the trial court's decision." *People v. Lewis*, 234 Ill. 2d 32, 37 (2009); see also *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433-34 (1979).

¶ 28    Here, the trial court's order of contempt was not a procedural step toward the court's final order granting Charity's motion to modify child support. We agree with Charity that contempt is a collateral issue to the modification of child support and should not be considered within the procedural progression. See *In re Marriage of Ryan*, 188 Ill. App. 3d 679, 682 (1989) (stating that contempt is "an ordinal, special proceeding collateral to and independent of the case in which it arises, where the imposition of the sanction does not directly affect the outcome of the principal action"). The outcome of the contempt

proceeding had no bearing on whether child support was modified. See *Burtell*, 76 Ill. 2d at 436 (stating that the unspecified judgment must be a "preliminary determination necessary to the ultimate relief sought"). Moreover, McStephen's notice of appeal did not adequately inform Charity of the issues to be addressed on appeal because the contempt order was not mentioned. Accordingly, we do not have jurisdiction to review the order finding McStephen in contempt of court and we grant Charity's motion to dismiss.

¶ 29                                    B. Order Compelling Employment

¶ 30        Before reaching the merits of this issue, we must again consider whether this court has jurisdiction. Charity raises the jurisdictional argument in the alternative in her brief and claims that the order compelling employment was a temporary order that McStephen cannot appeal.

¶ 31        This court is limited to reviewing appeals from final judgments, subject to various exceptions. *In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1989). "A final judgment in a civil case is entered when the last order closes the case and leaves no issues to be decided." *In the Interest of E.L.*, 152 Ill. App. 3d 25, 30 (1987). Charity is correct in stating that the order compelling employment was not a final order because the underlying proceeding revolved around Charity's motion to modify child support and the trial court had yet to rule on that issue. Thus, the order compelling employment did not terminate the litigation.

¶ 32        However, the trial court entered a final judgment in this case, that being the August 28, 2018 order modifying child support. That order disposed of the entire case on the merits and left no other issue pending before the trial court. Though the order compelling employment was interlocutory and non-appealable at the time it was entered, it became appealable once the order modifying child support was entered. *In the Interest of E.L.*, 152 Ill. App. 3d at 30

("It is well established that an order remains interlocutory, with regard to its appealability, only so long as no final order has been entered.").

¶ 33    However, our analysis does not end there. Although Charity does not raise this precise issue in her brief, we find it necessary to address whether we have jurisdiction over the court's order to compel employment where McStephen did not list the June 30, 2017 order in his notice of appeal. See *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 542 (2011) (stating that this court has an independent duty to assess our jurisdiction and dismiss the appeal if it is lacking). "A reviewing court has no jurisdiction to consider issues not specified in the notice appeal." *Citibank, N.A. as Trustee for American Home Mortgage Assets Trust 2006-3 v. Busuioc*, 2018 IL App (1st) 172956, ¶ 15. However, as stated above, an unspecified judgment may be reviewed if it is a step in the procedural progression of the specified judgment.

¶ 34    Here, the outcome of Charity's motion to compel employment had no bearing upon whether the child support order should be modified, the ultimate issue. As such, we find that the court's order compelling McStephen to seek employment was not part of the procedural progression in the underlying proceeding that sought to modify McStephen's child support obligation. Accordingly, we do not have jurisdiction to consider this issue either.

¶ 35                    C. Order Modifying Child Support

¶ 36    Lastly, we address McStephen's contention that the trial court erred in modifying child support. He argues that the trial court should not have imputed income to him because there was no evidence to support a finding that he was voluntarily unemployed. McStephen also briefly mentions that the court arbitrarily imputed income to him in the amount of $42,860 based on half of the annual mean wage for lawyers in Kankakee, Illinois.

¶ 37     McStephen did not provide this court with a transcript of proceedings held on April 30, July 13, and August 28, 2018, as is required pursuant to Illinois Supreme Court Rule 323 (eff. July 1, 2017). There is also no bystander's report or agreed statement of facts. See Ill. S. Ct. R. 323 (eff. July 1, 2017). We only have the trial exhibits that were included in the common law record. It is McStephen's burden to provide the reviewing court with a sufficiently complete record to allow for meaningful appellate review. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 291-92 (1984). Because we do not know what occurred at the hearings, we rely on the trial exhibits alone and we must presume that the absent transcripts would have supported the trial court's findings. See *id.* at 392.

¶ 38     Section 505(a) of the Act allows the trial court to order a parent to pay "an amount reasonable and necessary for the support of the child." (Internal quotations and citations omitted.) *In re Marriage of Moorthy and Arjuna*, 2015 IL App (1st) 132077, ¶ 38. Accordingly, courts have the authority to compel payors to pay child support at a level commensurate with their earning potential. *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 107 (2000). Where present income is uncertain, "the trial court may impute income to the payor." *In re Marriage of Pratt*, 2014 IL App (1st) 130465, ¶ 26. But first, the court must find that the payor: (1) has become voluntarily unemployed or underemployed; (2) is attempting to evade a support obligation; or (3) has unreasonably failed to take advantage of an employment opportunity. *In re Marriage of Ruvola*, 2017 IL App (2d) 160737, ¶ 39. We will not disturb the trial court's factual finding that one of these factors is present unless it is against the manifest weight of the evidence. *In re Marriage of Gosney*, 394 Ill. App. 3d 1073, 1077 (2009). However, the trial court's ultimate decision to impute income and the amount

imputed is reviewed for abuse of discretion. *Id.* Abuse of discretion occurs where "no reasonable person would take [the court's] view." *Pratt*, 2014 IL App (1st) 130465, ¶ 22.

¶ 39    McStephen contends that the trial court is required to make a finding that he was unemployed, as opposed to underemployed, and there was no evidence presented to support a finding that he was unemployed because his financial documents show that he had a monthly income and was an attorney in solo practice. However, Illinois courts have found that "the court may set a support obligation at a level higher than the parent's actual income" where "a party is not making a good-faith effort to earn sufficient income." *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 45 (citing *Sweet*, 316 Ill. App. 3d at 107); see also *In re Marriage of Blume*, 2016 IL App (3d) 140276, ¶¶ 29-31. Moreover, the legislature recently enacted section 505(a)(3.2) of the Act, which applies to "[u]nemployment or underemployment[,]" and states in pertinent part:

> "If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, the ownership by a parent of a substantial non-income producing asset, and earning levels in the community."

750 ILCS 5/505(a)(3.2) (West Supp. 2017). This provision mandates that the court impute income where a parent is either unemployed *or* underemployed, and thus, McStephen is incorrect that the court must make a finding that he is unemployed.

¶ 40    Here, the trial court found that McStephen was voluntarily underemployed, and we defer to the trial court's findings because "the court is in a superior position to observe the

demeanor of the witnesses while testifying, to judge their credibility and to determine the weight their testimony and the other trial evidence should receive." *In re Estate of Bennoon*, 2014 IL App (1st) 12224, ¶ 72. We find that the record in this case, though limited, supports the court's finding. There was evidence presented at the June 30, 2017 hearing that McStephen had an undergraduate degree, a law degree, and a master's degree and was an adjunct professor who voluntarily declined teaching during the Spring 2017 semester to pursue an unsuccessful campaign for mayor of Chicago. The trial court found that the only legal services McStephen had provided were in a *pro bono* capacity, and we presume the court's findings were based on the evidence presented. Thus, the court's finding that McStephen was voluntarily underemployed was not against the manifest weight of the evidence.

We must now determine whether the trial court properly set McStephen's earning potential at $42,860. To determine a party's earning potential, the court should focus on "(1) the work and earnings history of the parent, (2) the parent's educational background, (3) the parent's occupational qualifications, and (4) prevailing job opportunities in the geographic area." *Liszka*, 2016 IL App (3d) 150238, ¶ 45. The provision also requires the court to look at "the ownership by a parent of a substantial non-income producing asset, and earning levels in the community." 750 ILCS 5/505(a)(3.2) (West Supp. 2017).

¶ 41　　Based on our review of the record, it is clear that the court's projected earning potential was based on evidence presented from the Bureau of Labor Statistics as to the average salary for lawyers in various areas near McStephen's residence. There was also evidence that McStephen had multiple advanced degrees and that he had work experience as a *pro bono* lawyer and as a professor that would enable him to find full-time employment suitable and

commensurate with his educational background. The court arrived at a figure that was approximately half of the mean salary ($85,720) for a lawyer in Kankakee, Illinois, which is 40 miles south of McStephen's residence. The mean salary for a lawyer in Chicago, where McStephen resides is $134,570, but the court did not impute half of that amount to McStephen. Instead, the court found it more appropriate to impute a lesser amount due to McStephen's limited experience as an attorney.

¶ 42    Moreover, McStephen had the opportunity to present evidence to counter Charity's evidence of his earning potential, and as far as we can tell from the record, he did not do so. McStephen continued to argue that his election campaigns and position as an adjunct professor were sufficient avenues of employment. The court apparently disagreed. The court particularly expressed concerns with McStephen's ability to fund political campaigns and his lack of a full-time job while at the same time having a minor child to support. At the hearing on June 30, 2017, the court stated that seeking election was not a viable source of employment because it was "too speculative" and campaigns cost money, which the court found to be unreasonable when McStephen has a child to support. See *Sweet*, 316 Ill. App. At 107 (stating that though one party wishes to be self-employed, "the interests of the other spouse and the children may sometimes take precedence"). We find that the court considered appropriate evidence related to the factors set out in the statute above. Consequently, the record supports the court's findings and the court did not abuse its discretion in imputing income to McStephen.

¶ 43    Accordingly, the trial court did not abuse its discretion in modifying child support.

¶ 44                                    III. CONCLUSION

¶ 45    For the reasons stated, we affirm the judgment of the Circuit Court of Cook County.

¶ 46        Affirmed.