NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250777-U

NO. 4-25-0777

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 26, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| In re MARRIAGE OF BROWN | ) | Appeal from the |
| (Randall P. Brown, | ) | Circuit Court of |
|     Petitioner-Appellant, | ) | Winnebago County |
|     and | ) | No. 12D21 |
| Elisha I. Padilla-Brown, | ) | |
|     Respondent-Appellee). | ) | Honorable |
| | ) | Joseph Peter Bruscato, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed in part, reversed in part, and remanded with directions, concluding the trial court did not err by imputing income to petitioner for the six-and-a-half-year period in which he was unemployed but erred by imputing income to him after he obtained employment and by imputing an income in the amount of $100,000 per year for the period in which he was unemployed.

¶ 2   In 2012, petitioner, Randall P. Brown, filed a petition to dissolve his marriage to respondent, Elisha I. Padilla-Brown. The parties had been married since 2010 and had one child together. Proceedings on the dissolution petition ceased shortly after they were initiated but then recommenced in 2015. After a decade of litigation, the trial court entered a final judgment of dissolution. Randall appeals, arguing the court erred by imputing income to him for the purpose of child support or, alternatively, erred by imputing income to him in the amount of $100,000 per year. For the reasons the follow, we affirm in part, reverse in part, and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4　　　　The following limited background is pertinent to the issue of imputing income to Randall for the purpose of child support.

¶ 5　　　　　　　　　　　　　A. Evidence

¶ 6　　　　At a September 2022 evidentiary hearing, Randall was examined by both his attorney and Elisha's attorney.

¶ 7　　　　On examination by his attorney, Randall testified he was 42 years old. He previously was employed as a "business analyst" for a company owned by his father. His employment with that company began in November 2008. Between 2010 and 2013, he earned "[a]round $40,000." In 2014, his earnings increased to about $96,000. He explained, "My dad saw that I was struggling to pay the bills that I had from Elisha, and he also knew he was selling it," "so he just increased it." In June 2015, the company was sold. Randall was then fired in November 2015. Randall estimated he earned approximately $100,000 in 2015, which he indicated included a $20,000 severance package and $5,000 for accrued time off.

¶ 8　　　　Randall was unemployed from November 2015 to June 2022. During that time, he received financial assistance from his parents through gifts and loans. He was ordered to provide Elisha with $50 a week for temporary child support. Since 2015, he paid $50 a week on a credit card used by Elisha.

¶ 9　　　　In June 2022, Randall obtained employment as a "data analyst" at a company. He continued to work at that company as of the evidentiary hearing. It was a full-time position providing a salary of $50,000 per year.

¶ 10　　　　On examination by Elisha's attorney, Randall acknowledged he received a Master of Business Administration (MBA) from Northern Illinois University in 2014, his 2015 tax return indicated he made approximately $112,000, and the company where he now worked was owned

in part by his father.

¶ 11          When asked why he was unemployed for six and a half years, Randall testified:

         "Many reasons. We didn't know what was going to happen, whether I was going to have to move. In the beginning I was told by my attorneys that [my daughter] would be moved back here, that she wouldn't have been allowed to go back up to Wis—or to be permanently in Wisconsin.

         Then they told me later on that because of the time passed that [my daughter] was not going to be brought back because she was going to school. So then I started looking for stuff up there."

When then asked how many jobs he applied for during the "six-and-a-half-year span," Randall testified, "10, 15." He indicated he was not offered any of the jobs. Randall acknowledged he did not have any physical or mental impairments preventing him from working. He disagreed with the statement that he was lazy or unmotivated.

¶ 12          When asked about the earning potential of someone with an MBA, Randall testified, "It depends on what industry you're looking at." He also testified:

         "[An MBA] doesn't really do a lot unless you're a manager. What you learn in an MBA is how to manage these different—you know, marketing or finance of these different areas. It doesn't help you—data analytics, no one cares if you know how to—*** when you're doing data."

Randall asserted having an MBA did not "relate to any job that I've done." He explained he obtained the MBA for "later on in life," when "I take over my parents farm after they pass away."

¶ 13                           B. Arguments

¶ 14          In October 2022, the parties submitted written arguments to the trial court.

¶ 15        Elisha argued for the trial court to impute income to Randall in the amount of $100,000 per year. She asserted, in part:

"In November 2015, Randy had an MBA and was earning in excess of $100,000 per year. He then went the next 6.5 years without a job. He offered no legitimate, good faith, *bona[ ]fide* reason for this. His work history for many years prior to 2015 demonstrated that he was capable of full-time, gainful employment. Imputing Randy an annual salary of at least $100,000 is appropriate in the present case. Both in the past, and presently, he is capable of earning as much."

¶ 16        Randall, in turn, argued against the trial court imputing income to him. First, he asserted the evidence did not show he was voluntarily unemployed or underemployed, was attempting to evade a support obligation, or unreasonably failed to take advantage of an employment opportunity. He emphasized he was involuntarily terminated from his employment in November 2015, he sought but was unable to obtain new employment until June 2022, he satisfied the temporary child support obligations while unemployed, and there was no evidence showing the existence of an employment opportunity to which he failed to take advantage. Randall also asserted, even if income should be imputed to him, it would be improper to impute $100,000 per year based solely upon an income which he earned almost seven years earlier from a job he lost due to no fault of his own. He emphasized there was no evidence showing the existence of an employment opportunity where he could make $100,000 per year.

¶ 17                            C. Decision

¶ 18        In January 2023, the trial court rendered an oral decision. The court stated:

"The Court now turns to [Randall]. The Court finds that in 2014 [he] made $96,000, and in 2015 [he] made $110,000. The Court finds that [Randall] lost his

- 4 -

employment in November 2015 and did not work again until June 2022. The Court finds that in June of 2022 [he] took a job making $50,000 per year.

The Court finds that [Randall] did at a point in time achieve and earn a master's degree. The Court finds that [he] has, at all times relevant, been a healthy individual and capable of being employed. Therefore, the Court finds that [Randall] is underemployed, and this Court should impute income to [him].

The Court adopts the argument of [Elisha] and imputes income of $100,000, which the Court would note is consistent, I believe, subject to verification, but for the most part consistent with the Court's previous findings when making determination on issues of interim fees, as a side note.

The Court further finds that [Randall] continues to underemploy himself, and therefore imputes income of $100,000 per year over and above the $50,000 salary that [he] is currently making. In other words, for the purposes of determining earned income, employment income, it is this Court's position that $100,000 should be the amount used for that determination through to today's date."

The court later entered a written order providing, "For the reasons stated in open Court, this Court finds that [Randall] had gross annual income of $110,000.00 in 2015 and imputes employment income to him for the years 2016 through 2023 of $100,000.00 per year."

¶ 19        This appeal followed.

¶ 20        II. ANALYSIS

¶ 21        On appeal, Randall argues the trial court erred by imputing income to him for the purpose of child support or, alternatively, erred by imputing income to him in the amount of $100,000 per year. While Elisha has not filed a brief responding to Randall's arguments, we find

- 5 -

that does not serve as an impediment to reviewing the merits of this appeal. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976); *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009).

¶ 22    In a proceeding for the dissolution of marriage, a trial court may order a parent to pay an amount reasonable and necessary for the support of their child. 750 ILCS 5/505(a) (West 2022). The first step in calculating any child support obligation is to determine the monthly net income of the child's parents. *Id.* § 505(a)(1.5)(A).

¶ 23    Both our legislature and our courts have recognized situations where it is appropriate to impute income to a parent for the purpose of calculating child support. See *id.* § 505(a)(3.2); *In re Marriage of Gosney*, 394 Ill. App. 3d 1073, 1077 (2009). Those situations include where the parent is (1) voluntarily unemployed or underemployed, (2) attempting to evade a support obligation, or (3) has unreasonably failed to take advantage of an employment opportunity. See 750 ILCS 5/505(a)(3.2) (West 2022); *Gosney*, 394 Ill. App. 3d at 1077. Imputing income in these situations ensures child support is based upon a parent's actual earning capacity. *Gosney*, 394 Ill. App. 3d at 1077. It is for a trial court to determine if, based upon the evidence presented, the circumstances are such that it is appropriate to impute income.

¶ 24    Where a trial court determines it appropriate to impute income, it must then determine an appropriate amount to impute based upon the parent's earning capacity. See 750 ILCS 5/505(a)(3.2) (West 2022); *Gosney*, 394 Ill. App. 3d at 1077. The court should consider the specific circumstances of the parent, including, but not limited to, (1) the employment potential and probable earnings level based on the parent's work history, (2) the parent's occupational qualifications including educational background, (3) the prevailing job opportunities in the relevant geographic area, (4) the earnings levels in the relevant community, and (5) the parent's

ownership of a substantial non-income producing asset. See 750 ILCS 5/505(a)(3.2) (West 2022); *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 45; see also 750 ILCS 5/505(a)(3.2a) (West 2024) (setting forth additional factors). The amount imputed must be supported by evidence, "not mere speculation." *Liszka*, 2016 IL App (3d) 150238, ¶ 46.

¶ 25    The determinations concerning whether to impute income and at what amount are determinations reserved to the sound discretion of a trial court. See *In re Marriage of Pasquesi*, 2015 IL App (1st) 133926, ¶ 29 ("The findings of the trial court as to net income and the award of child support are within its sound discretion." (Internal quotation marks omitted.)). As a result, these determinations will not be disturbed on appeal absent an abuse of discretion. *Gosney*, 394 Ill. App. 3d at 1077; *Liszka*, 2016 IL App (3d) 150238, ¶ 47. An abuse of discretion will be found only where the "ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24.

¶ 26    First, Randall challenges the trial court's determination to impute income to him during the period in which he was unemployed. He asserts the evidence did not present a situation where it would be appropriate to impute income. We disagree. While the court characterized the situation as one of underemployment, the record makes clear the court in fact believed it was one of voluntary unemployment. See *In re Marriage of Beltran*, 2025 IL App (3d) 240064-U, ¶ 74 (concluding, despite the absence of an explicit finding of voluntary unemployment, the trial court's oral explanation demonstrated the court so found). The court emphasized the evidence showed Randall was unemployed for a six-and-a-half-year period, despite being a healthy individual capable of being employed. Randall also testified he applied for only 10 or 15 jobs during the six-and-a-half-year period. Even if the court found this testimony credible, that would mean he

averaged approximately two job applications per year. A parent who is involuntarily terminated from a job and otherwise capable must make reasonable efforts to obtain new employment. See *In re Marriage of Ruvola*, 2017 IL App (2d) 160737, ¶¶ 41-44 (concluding a finding of voluntary underemployment was supported by the lack of reasonable efforts to seek employment within the petitioner's field of training). Randall did not make such efforts and, therefore, was voluntarily unemployed. As a result, we find the court did not abuse its discretion in determining income should be imputed to Randall for the six-and-a-half-year period in which he was unemployed.

¶ 27 Second, Randall challenges the trial court's determination to impute income to him after he obtained employment. He asserts the evidence did not present a situation where it would be appropriate to impute income. We agree. In support of its finding of underemployment, the court emphasized the evidence showed (1) the salary from Randall's new employer in 2022 was approximately half of the amount of the earnings which Randall made in 2014 and 2015 and (2) Randall had obtained an MBA. This evidence, we find, is insufficient to show voluntary underemployment. First, "[e]vidence that [a parent] once earned a certain salary and presumably could again is an insufficient basis upon which to impute income." *Liszka*, 2016 IL App (3d) 150238, ¶ 47. Second, there was no evidence of the availability of other employment opportunities available to Randall which could have provided a higher salary based upon his qualifications. See *In re Marriage of Van Hoveln*, 2018 IL App (4th) 180112, ¶ 45. Without more, the finding of underemployment cannot stand. The decision to impute income to Randall after he obtained employment in 2022 must be reversed.

¶ 28 And third, Randall challenges the trial court's determination to impute income to him in the amount of $100,000 per year for the period in which he was unemployed. He asserts the amount was improperly based solely upon his prior earnings from a job in which he was

involuntarily terminated almost seven years earlier. We agree. In reaching its determination concerning the amount to impute, the court stated it adopted the argument of Elisha, who argued it was appropriate to impute at least $100,000 per year based upon Randall earning in excess of $100,000 per year in 2015 with an MBA. The court also emphasized evidence supporting Elisha's argument. A trial court may not, however, "impute income in the amount of [a parent's] prior income where the [parent] has been involuntarily terminated from his prior employment and there is no evidence that a job with the same salary is available to him." *Liszka*, 2016 IL App (3d) 150238, ¶ 47; see *In re Marriage of Sinha*, 2021 IL App (2d) 191129, ¶ 43. Given the rationale provided, the determination concerning the amount to impute cannot stand. The decision to impute income to Randall in the amount of $100,000 per year for the period of unemployment must be reversed and the matter remanded for the court to determine an appropriate amount to impute. See *Ruvola*, 2017 IL App (2d) 160737, ¶ 41 (noting the fact the amount of the income attributed was more in line with the petitioner's recent earnings as a tennis instructor rather than past earnings as a chemist was likely attributed to the lack of "up-to-date salary information for positions within the chemistry field"); *In re Marriage of Werhun*, 2025 IL App (3d) 250201-U, ¶ 39 (finding there was insufficient evidence to impute income to the level requested, as that request was based only on the parent's prior earnings and skill set, without any evidence of similar employment with a comparable salary currently available).

¶ 29                                    III. CONCLUSION

¶ 30          For the reasons stated, we affirm the trial court's decision to impute income to Randall for the six-and-a-half-year period in which he was unemployed but reverse its decisions to impute income to Randall after he obtained employment and to impute $100,000 per year of income for the period of unemployment. We remand with directions for the court to determine an

appropriate amount of income to impute to Randall during the period of unemployment and then reconsider its other rulings and calculations to the extent they are affected by its new determination. We note the child support statute currently in effect requires any imputation of income "be accompanied by specific written findings identifying the basis or bases for imputation using [the statutory] factors." 750 ILCS 5/505(a)(3.2b) (West 2024).

¶ 31   Affirmed in part and reversed in part; cause remanded with directions.