2020 IL App (1st) 191283-U
Order filed: April 17, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-1283

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* the Marriage of: | ) | Appeal from the |
| | ) | Circuit Court of |
| HELEN NARDI, f/k/a Helen Jonas, | ) | Cook County. |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | No. 2014 D 5374 |
| and | ) | |
| | ) | |
| GABRIEL CORDOVA, | ) | Honorable |
| | ) | Jeanne Cleveland Bernstein, |
|     Respondent-Appellant. | ) | Judge Presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Circuit court did not abuse its discretion in failing to impute income to petitioner or in failing to recuse itself from this matter, nor did it exceed its authority in requiring respondent to provide and pay for a court reporter and pay for petitioner's fees and costs. However, the circuit court abused its discretion in calculating respondent's child support arrearage, and this matter is therefore remanded for recalculation of that amount.

¶ 2    Respondent-appellant, Gabriel Cordova, appeals from several postdissolution orders entered by the circuit court relating to the modification of his child-support obligation to petitioner

appellee, Helen Nardi, f/k/a Helen Jonas. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.[1]

¶ 3                                    I. BACKGROUND[2]

¶ 4      On June 10, 2014, Helen filed a petition for the dissolution of her marriage to Gabriel. The petition alleged that: the parties were married on July 7, 2007; they had two minor children, one born on October 2, 2007, and the other born on October 21, 2009 (the children); and the parties had been living separately since June 2010. Helen requested that she and Gabriel be awarded joint custody of the children. In his answer to the petition, and in a cross-petition for dissolution of marriage, Gabriel sought sole custody, care, and control of the children and requested that Helen pay child support.

¶ 5      The circuit court entered a judgment for dissolution of marriage (dissolution judgment) on May 12, 2015. The judgment incorporated the parties' marital settlement agreement (MSA), and joint parenting agreement (JPA). The MSA stated that Helen and Gabriel would have joint legal custody of the children and "named" Helen as "the residential parent." However, paragraph 1(D) of the JPA provides: "GABRIEL and HELEN agree that HELEN shall be the residential parent with respect to Education and GABRIEL shall be the residential parent for Medical and related issues." The visitation schedule contained in the JPA includes the following provision:

    "GABRIEL shall be entitled to regular parenting time with the children on alternate weekends commencing on Friday after school and ending on Sunday at 5:00 p.m., no later

_____

[1]      In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.
[2]      Portions of this order have been taken from a prior decision entered by this court in this matter. See, *In re Marriage of Jonas*, 2018 IL App (1st) 172871-U.

than 8:00 p.m. and on Monday overnight to Tuesday wherein he shall take the children to school and Thursday after school overnight until Friday wherein he shall take the children to school."

¶ 6    The MSA provides that Helen and Gabriel would split the costs of the minors' extracurricular activities, as well as the costs of school fees and tuition through high school graduation, with a maximum payment by Gabriel of $5,500 per year as to these expenses. As to child support, the JPA provides:

> "GABRIEL shall pay to HELEN as and for child-support, the sum of $200.00 per month which represents an amount below statutory guidelines. Said amount has been arrived at in light of the fact that GABRIEL will parent the children as much time as HELEN parents the children and in light of the fact that he will be contributing no more than $5,500.00 towards the children's educational and extracurricular expenses. Said obligation shall continue until the youngest child is emancipated."

¶ 7    On January 21, 2016, Helen filed a petition under section 510 of the Illinois Marriage and Dissolution Act (Act) (750 ILCS 5/510 (West 2016)), which sought to modify Gabriel's child support obligation based on a substantial change in circumstances. Helen alleged that she had been unemployed since July 2015 and, although she had been seeking new employment, she had become temporarily disabled after breaking her foot in October 2015. Helen maintained that Gabriel had earned a gross income of $69,000 in 2013 and that, on "information and belief," he also received a military disability pension of $500 per month. She asked that "a guideline child support [order] be entered based on [Gabriel's] net income." The petition included a certification signed by Helen, pursuant to section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2016)), but included no further evidentiary proof.

¶ 8     The matter was continued repeatedly, ultimately to January 17, 2017, for a pretrial conference.

¶ 9     On January 17, 2017, the parties appeared with counsel. At that time, Gabriel had not filed a responsive pleading to the petition to modify child support. Although there is no transcript of the proceedings, it appears that the court held only a pretrial conference on that date. Furthermore, on that date the court entered an order indicating that Helen's motion to modify child support was "before the court" and the court was "fully advised." The order: (1) directed Gabriel to pay Helen 28% of his net pay in child support based on his 2016 earnings; and (2) found that arrearages in child support would be calculated beginning on January 21, 2016 (the date the petition to modify was filed by Helen), after accounting for any child support payments Gabriel may have already made.

¶ 10    On February 16, 2017, Gabriel filed a petition to vacate the January 17, 2017, order. In the petition, he alleged that the issue of child support was discussed at a "brief" pretrial conference, but the court did not conduct an evidentiary hearing before entering the order which modified his child support payment. Gabriel asserted that, during the pretrial conference, "it was alleged that Helen was the residential parent and that she spent more time with the child." Gabriel argued that the court was not made aware that the JPA provided that Helen was a residential parent with respect to education, that he was the residential parent with respect to medical and related issues, and that he was to pay $200 per month in child support based on the understanding that he would parent the children as much as Helen would.

¶ 11    On May 16, 2017, the circuit court entered an order which denied Gabriel's motion to vacate the January 17, 2017, order and instructed both parties to exchange financial information.

¶ 12    On July 19, 2017, Helen filed a petition for rule to show cause and other relief alleging that Gabriel had not paid the increased child support based upon 28% of his net income, which she alleged was $1,290 per month, or the child support arrearage she calculated to be $21,020, pursuant to the order of January 17, 2017. Instead, Gabriel had continued to pay $200 per month in child support, pursuant to the dissolution judgment. On September 5, 2017, the circuit court gave Gabriel time to respond to the petition, appointed a child representative, and set a hearing on the petition for rule on October 11, 2017.

¶ 13    In Gabriel's verified response to the petition for rule to show cause, he admitted that a "temporary" child support order was entered "without prejudice" on January 17, 2017. He asserted that the issue of permanent child support was still pending. In an affirmative defense, Gabriel attacked the January 17, 2017, order as setting forth an improper "straight percentage" child-support obligation, which was ambiguous as to the exact amount to be paid.

¶ 14    On October 11, 2017, the court heard arguments on the petition for rule to show cause. The court entered an order on that date setting Gabriel's child support arrearage at $26,677.69, based upon the January 17, 2017 order, with statutory interest of 9% due on any amounts not paid after January 17, 2017. The order did not state how the arrearage amount of $26,677.69 had been calculated, and did not give a specific amount of modified monthly child support payments. The court discharged the petition for rule to show cause and set the case for October 12, 2017, "for entry of a child support order [and] determination of arrears."

¶ 15    On October 19, 2017, the circuit court entered a uniform order for support requiring Gabriel to pay $1,289.74 per month in child support, as well as $100 per month toward the outstanding arrears of $26,677.69. The obligation to pay the support would terminate on October 21, 2027. The case was continued to December 12, 2017, for a report from the child representative.

¶ 16    In response to Gabriel's motion requesting a finding under Supreme Court Rule 304(a) (eff. Mar. 8, 2016) as to the child support orders, on November 16, 2017, the court entered an order stating that the October 19, 2017, order was a permanent child support order. The order further stated that all issues between the parties had been resolved, there were no pending motions, and the child representative was discharged. Gabriel then filed a prior appeal (No. 1-17-2871), and his notice of appeal stated that he was appealing from the final order of November 16, 2017, "and any and all orders leading up to and included in said judgment including but not limited to the orders of: January 17, 2017; May 16, 2017; and October 19, 2017."

¶ 17    On appeal, Gabriel argued—*inter alia*—that the circuit court erred by failing to conduct an evidentiary hearing before modifying his child support obligations under section 510(a)(1) of the Act. We agreed with Gabriel on that issue, found it dispositive of his prior appeal, and therefore reversed the circuit court's judgment and remanded this matter to the circuit court for an evidentiary hearing on the merits of Helen's petition to modify child support. *In re Marriage of Jonas*, 2018 IL App (1st) 172871-U, ¶ 31.

¶ 18    Upon remand, Helen filed an appearance *pro se*. Thereafter, during a hearing held on October 25, 2018, the circuit court *sua sponte* sought a private attorney from the courtroom to represent Helen. It is undisputed that, at least with respect to Helen, this representation was to be provided *pro bono*. The circuit court also ordered Gabriel to provide a court reporter "at all times," and ordered the parties to exchange certain financial information and affidavits.

¶ 19    On November 13, 2018, Gabriel filed a motion seeking clarification regarding the circuit court's order. Gabriel specifically sought to clarify: (1) the exact nature of his obligation to provide a court reporter, and if he was responsible for paying for such a reporter, and (2) whether Helen's counsel would serve *pro bono* with respect to both parties, or whether Helen's counsel could seek

to recover fees and costs from Gabriel pursuant to the Act. In an order entered November 27, 2018, the circuit court clarified that Gabriel was responsible for providing a court reporter "at *every* court appearance." (Emphasis in original.) In a subsequently filed written response to the motion to clarify, Helen's counsel acknowledged that she responded to the circuit court's *sua sponte* request to represent Helen *pro bono*, but also asserted that the Act entitled Helen to seek interim and prospective attorney's fees and costs from Gabriel in order to "level the playing field." Helen's counsel also stressed that no order entered by the circuit court precluded Helen from exercising her right to seek fees and costs under the Act.

¶ 20    Thereafter, on January 3, 2019, Helen's counsel filed a petition seeking interim and prospective fees and costs. In his written response to this petition, Gabriel asserted that Helen should not be awarded attorney fees and costs because she was being provided counsel *pro bono*, there was thus no need to "level the playing field," and Gabriel did not have the financial resources to pay Helen's fees and costs.

¶ 21    The parties then each filed a petition for a rule to show cause. The issues raised in those petitions, and the circuit court's rulings with respect thereto, are not at issue in this appeal.

¶ 22    The matter proceeded to a hearing on all pending matters, which was held over the course of two days in March and May of 2019. The circuit court heard testimony from both Helen and Gabriel, and received several documents into evidence.

¶ 23    On May 31, 2019, the circuit entered a written order resolving: (1) Helen's petition to modify child support, (2) the petitions for rule to show cause filed by the parties, (2) Gabriel's motion for clarification, (3) Helen's petition for fees and costs, and (4) Gabriel's oral motion for the circuit court judge to recuse herself, made on the second day of the hearing. In that order, as is relevant to this appeal, the circuit court: (1) concluded that Helen was unable to work, had no

current income, and no income would therefore be imputed to her, (2) ordered that Gabriel would be responsible for paying $1,323 per month in in child support, commencing June 1, 2019, as well as $100 per month toward an arrearage for past due child support calculated to be $29,565.37, an amount to which statutory interest would accrue, (3) entered a $12,144.12 judgment for fees and costs against Gabriel and in favor of Helen's attorney, and (4) denied the oral motion for recusal. As to the arrearage, the record reflects that the trial court's calculation included the $26,677.69 arrearage previously calculated (as reflected in the October 19, 2017, order), and added $3,801.58 in statutory interest on that amount. The order also finally determined all the remaining, pending issues, and stated that the matter was "off call."

¶ 24     Gabriel filed a timely notice of appeal on June 21, 2019. Helen did not file an appellee's brief with this court, and on this court's own motion we ordered the case be taken on Gabriel's appellate brief and the record on appeal only.

¶ 25                                   II. ANALYSIS

¶ 26     Again, Helen has failed to file an appellee's brief. Nevertheless, an appeal may be decided without the benefit of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (a reviewing court can decide the merits of the appeal where the record is simple and the claimed errors can be decided without the aid of an appellee's brief).

¶ 27     Gabriel first argues that the circuit court erred in modifying his child support obligation, where the court's conclusion that Helen was unable to work and the court's resultant failure to impute any income to her were an abuse of discretion.

¶ 28     Section 510(a)(1) of the Act provides that a court may modify a child support order "upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a)(1) (West 2018). A parent

seeking a modification of child support, based on a substantial change in circumstances, has the burden of proof to establish that a substantial change in circumstances has occurred since the entry of the prior support order. *In re Marriage of Sorokin*, 2017 IL App (2d) 160885, ¶ 28; *In re Marriage of Saracco*, 2014 IL App (3d) 130741, ¶ 13. If a party seeking a modification establishes that there is a substantial change in circumstances, the circuit court may modify the child support obligation in accordance with the factors listed in section 505(a) of the Marriage Act. 750 ILCS 5/505(a) (West 2018); *In re Marriage of Rash and King*, 406 Ill. App. 3d 381, 388 (2010).

¶ 29    Motions to modify child support turn on the individual facts and circumstances of each case. *In re Marriage of Garrett*, 336 Ill. App. 3d 1018, 1020 (2003). The decision to modify a child support payment lies within the discretion of the trial court and we will disturb the decision only where there has been an abuse of discretion. *Id*. A trial court's decision as to whether to impute income is also reviewable under the abuse of discretion standard. *In re Marriage of Van Hoveln*, 2018 IL App (4th) 180112, ¶ 43.

¶ 30    With respect to the circuit court's conclusion that Helen was unable to work, Gabriel contends that this finding was not adequately supported by the evidence. The evidence introduced at the hearing established that Helen had been gainfully employed for many years in the past. She had also been receiving unemployment benefits until March 2019, and one is only entitled to such benefits if they are "able to work." 820 ILCS 405/500(C) (West 2018); *Moss v. Department of Employment Security*, 357 Ill. App. 3d 980, 985 (2005). Helen also testified that she was actively searching for employment at the time of the hearing, albeit unsuccessfully.

¶ 31    Nevertheless, even if the circuit court abused its discretion in concluding that Helen was unable to work, we find any such error to be harmless. It is undisputed that Helen was not gainfully employed at the time of the hearing. Thus, the only prejudice Gabriel contends resulted from the

finding that Helen could not work was the circuit court's resulting decision not to impute any income to her for purposes of calculating a modification of his child support obligation.

¶ 32    However, the Act itself provides that only where "a parent is *voluntarily* unemployed or underemployed, child support shall be calculated based on a determination of potential income." (Emphasis added.) 750 ILCS 5/505(3.2) (West 2018). As such, Illinois courts may impute income to a parent for purposes of calculating that parent's statutory child support obligation only where the parent is voluntarily unemployed, is attempting to evade a support obligation, or unreasonably failed to take advantage of an employment opportunity. *In re Marriage of Gosney*, 394 Ill. App. 3d 1073, 1077 (2009). "If none of these factors are in evidence, the court may not impute income to the noncustodial parent." *Id*.

¶ 33    Here, while there may have been evidence of Helen's ability to work, there was absolutely no evidence that her lack of employment was due to any of the three *Gosney* factors outlined above. As such, the circuit court properly declined to impute any income to Helen, and any possible error in concluding that no income should be imputed to her specifically because of her purported inability to work was harmless.[3]

¶ 34    Gabriel next contends that the circuit court erred in finding that his arrearage for past-due child support amounted to $29,565.37. He specifically argues the circuit court erred by basing his current arrearage upon the $26,677.69 amount included in the October 17, 2017, order previously

---

[3]    In a related argument, Gabriel also faults the circuit court for not—at a minimum—requiring Helen to complete a job diary documenting her continued efforts to find employment, pursuant to section 505.1(a) of the Act. 750 ILCS 5/550.1(a) (West 2018). ("Whenever it is determined in a proceeding to establish or enforce a child support or maintenance obligation that the person owing a duty of support is unemployed, the court may order the person to seek employment and report periodically to the court with a diary, listing or other memorandum of his or her efforts in accordance with such order.") That section clearly allows, but does not require, a circuit court to require such a diary. Here, the record reflects Helen's good-faith efforts to find employment, and we therefore find no abuse of discretion in the circuit court's failure to impose this requirement upon her.

reversed by this court.

¶ 35    We review this issue for an abuse of discretion. *In re Marriage of Schomburg & Osland*, 2016 IL App (3d) 160420, ¶ 19. "A circuit court abuses its discretion when it makes an error of law." *Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 24 (2009). We agree with Gabriel that the circuit court erred in making this calculation.

¶ 36    Pursuant to section 510(a) of the Act, "the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification. 750 ILCS 5/510(a) (West 2018). "A plain reading of section 510(a) dictates that a retroactive modification is limited to only those installments that date back to the filing date of the petition for modification and, thus, insures that the respondent is put on notice prior to the court ordering him to pay increased support." *In re Marriage of Pettifer*, 304 Ill. App. 3d 326, 328 (1999).

¶ 37    Thus, here it was entirely within the circuit court's discretion to modify and increase Gabriel's monthly child support obligation to $1323—an amount Gabriel has not challenged other than the specific argument regarding imputation of Helen's income discussed and rejected above— and to then make that obligation retroactive to the date upon which Helen originally filed her petition to modify child support, January 21, 2016.

¶ 38    However, in calculating Gabriel's child support arrearage, in light of this retroactive increase in his monthly obligation, the circuit did not add up the 40 total monthly child support installments due between January 21, 2016, and the entry of the May 31, 2019, order (an amount we calculate to be $52,920), and then subtract the total amount of child support payments Gabriel had actually made over the course of that time. Rather, it is clear from the record that the circuit court arrived at its newly-calculated $29,565.37 arrearage for past due child support by—at least

in part—including the $26,677.69 arrearage previously calculated (as reflected in the October 19, 2017, order) and adding $3,801.58 in statutory interest on that amount.

¶ 39    As detailed above, because an evidentiary hearing was not held before the entry of the October 19, 2017, order modifying Gabriel's child support obligations and entering a judgment for the previously-calculated arrearage, we reversed that judgment and remanded this matter to the circuit court for an evidentiary hearing on the merits of Helen's petition to modify child support in our prior order. *In re Marriage of Jonas*, 2018 IL App (1st) 172871-U, ¶ 31. It was therefore improper for the circuit court to base its calculation on the arrearage contained in the previously reversed order, and include in its new calculation of Gabriel's arrearage any statutory interest on the $26,677.69 judgment that we had previously reversed. See *7-Eleven, Inc. v. Dar*, 363 Ill. App. 3d 41, 45-46 (2005) (postjudgment interest is not properly awarded with respect to a reversed and vacated judgment).

¶ 40    We must therefore reverse the $29,565.37 judgment entered against Gabriel for an arrearage in past-due child support. Unfortunately, the record is insufficient for us to recalculate the correct amount of Gabriel's arrearage, as the total amount of Gabriel's historical child support payments, as well as any payments he made toward the previously-calculated arrearage, is not entirely clear. We therefore remand this matter with directions that the amount of the acreage be determined by first calculating the total amount owed by Gabriel pursuant to the newly-calculated child support obligation of $1323 per month, backdated to the date Helen originally filed her petition to modify child support, January 21, 2016 and subtracting from that amount any and all payments Gabriel has made to Helen for child support since that time, whether they be his prior monthly child support payments or payments made toward the previously-calculated child support arrearage. Any statutory interest added to the arrearage resulting from this calculation should only

be imposed from the date the arrearage is calculated and a judgment as to that amount is entered upon remand. See *In re Marriage of Waltrip*, 216 Ill. App. 3d 776, 786 (1991) ("In cases where the exact amount owed is not calculated until the disposition of the case following remandment, interest on the judgment runs from the date of the new decree.").

¶ 41 Gabriel next asserts that the circuit court "exceeded its authority" by ordering him to provide and pay for a court reporter at every appearance, and in appointing an attorney to represent Helen and ordering Gabriel to pay for Helen's attorney. Importantly, Gabriel does not contend that the circuit abused its discretion in making these decisions, only that the circuit court lacked any authority to do so. We find that the circuit court did not exceed its authority.

¶ 42 With respect to the requirement that a court reporter be provided for all appearances, we find that this requirement fits well within the circuit court's inherent authority to control its own docket and the course of litigation, including the authority to prevent undue delays in the disposition of cases. *J.S.A. v. M.H.*, 224 Ill. 2d 182, 196 (2007). From our review of the record, the circuit court believed that our review of her orders in Gabriel's prior appeal was hampered by the lack of a complete record on appeal, and took this action to ensure that a more complete record would be available for any future appellate proceedings, thus preventing any further delay. The circuit court did not exceed its authority in entering this order.

¶ 43 We also conclude that the circuit court's order that Gabriel pay for both a court reporter and Helen's attorney fees and costs was also within its authority. As an initial matter, the record does not actually reflect that Helen's attorney was appointed by the circuit court. Rather, during the first hearing held upon remand the circuit court *sua sponte* sought an attorney to volunteer to represent Helen, and one of the attorneys present in the courtroom agreed to do so.

¶ 44 That matter aside, section 508(a) of the Act specifically grants the circuit court the authority

to "order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees." 750 ILCS 5/508(a) (West 2018). The requirement that Gabriel pay for a reporter and Helen's fees and costs fits squarely within this specific statutory authority.

¶ 45    Again, Gabriel has not argued that the circuit court abused its discretion in entering these orders, rather that the circuit court lacked any authority to do so. On that limited issue, we must disagree.

¶ 46    Finally, Gabriel contends that the circuit court abused its discretion in not recusing itself from this matter considering the purported evidence of bias against Gabriel and his attorney.

¶ 47     Pursuant to Illinois Supreme Court Rule 63(C)(1), "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned," including instances where "the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." Ill. S. Ct. R. 63(C)(1)(a) (eff. Feb 2, 2017). "Whether a judge should recuse himself is a decision in Illinois that rests *exclusively within the determination of the individual judge*, pursuant to the canons of judicial ethics found in the Judicial Code." (Emphasis in original.) *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 45. The trial court is in the best position to determine whether it needs to recuse itself. *Hassebrock v. Deep Rock Energy Corp.*, 2015 IL App (5th) 140105, ¶ 55. "When reviewing a trial judge's recusal decision, we must determine whether the decision was an abuse of the judge's discretion." *Barth v. State Farm Fire & Casualty Co*., 228 Ill. 2d 163, 175 (2008).

¶ 48    On appeal, Gabriel first cites the circuit court's orders requiring him to provide a court reporter and to pay for Helen's fees and costs as evidence of bias. However, we have already concluded that these orders were within the court's authority. Gabriel has not argued that they represented an abuse of discretion, and we find nothing about these orders to be reflective of

improper bias.

¶ 49    Gabriel next cites to various exchanges between the circuit court and either Gabriel or his counsel, which he claims revealed the courts bias and lack of impartiality. However, " 'judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, and their cases, ordinarily do not support a bias or partiality challenge,' " unless " 'they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.' " *Eychaner v. Gross*, 202 Ill. 2d 228, 281 (2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). We have carefully reviewed the record, and conclude that the circuit court's statements and actions here did nothing to reveal anything resembling such a high degree of favoritism or antagonism. We therefore find that the circuit court did not abuse its discretion in denying the oral motion to recuse.

¶ 50                                III. CONCLUSION

¶ 51    For the foregoing reasons, we affirm the judgment of the circuit court in part, reverse in part, and remand for further proceedings consistent with this order.

¶ 52    Affirmed in part and reversed in part.

¶ 53    Cause remanded.