NOTICE

Decision filed 11/12/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 200032-U

NO. 5-20-0032

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| JENNIFER R. GRIFFITH, | ) | Shelby County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | No. 16-D-1 |
| and | ) | |
| | ) | |
| JASON M. GRIFFITH, | ) | Honorable |
| | ) | Amanda S. Ade-Harlow, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Wharton concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court's order modifying the appellee's maintenance and child support obligations is affirmed where the court did not abuse its discretion in determining that the appellee's decreased income after he was involuntarily terminated from his employment constituted a substantial change in circumstances warranting modification.

¶ 2     This is an appeal arising from an order of the circuit court of Shelby County granting the appellee, Jason M. Griffith's, motion to modify maintenance and child support that he was required to pay to the appellant, Jennifer R. Griffith, under the parties' judgment for

1

dissolution of marriage and marital separation agreement (MSA). For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The parties were married in April 1994. There were two children born of the marriage, one of whom was still a minor at all times relevant to this appeal. On November 15, 2016, the trial court entered a judgment of dissolution of marriage incorporating the MSA which, *inter alia*, ordered the appellee to pay the appellant $1970 in monthly maintenance and $695 in monthly child support. The MSA provided in relevant part that "maintenance is subject to modification and termination pursuant to 750 ILCS 5/510."

¶ 5     At the time of the dissolution judgment, when the original maintenance and child support orders were entered, the appellee worked for Stuart C. Irby Company (Irby). The appellee's financial affidavit filed on January 25, 2016, indicated that his estimated salary was $91,754.01 per year. His amended financial affidavit filed on September 22, 2016, showed that his gross income for 2015 was $97,177 and his gross monthly income was $7929. According to the appellant's financial affidavit filed on February 1, 2016, she was employed part-time at CVS earning $9.20 per hour; she worked around 20 hours per week. The paystubs attached to her financial affidavit revealed that she was paid bi-weekly, with the gross pay being approximately $423 on one check and $450 on the other.

¶ 6     On January 28, 2019, the appellee filed a motion to modify maintenance and child support. A hearing on the appellee's motion to modify was held on October 3, 2019, during which the following evidence was presented.

¶ 7    The appellee testified that he started working for Irby in April 2014 when he accepted the position of director of services for Irby's tool repair business. When he was hired to work for Irby, the appellee was provided a handbook outlining company policies. He signed the handbook receipt and acknowledgement form on June 18, 2014. He also signed a personal commitment and acknowledgement of receipt of the code of ethics and business conduct that same day.

¶ 8    Irby had also established a travel and expense policy, which was introduced as the appellant's Exhibit F. The policy established a detailed protocol for claiming and obtaining reimbursement for expenses. It provided that, "The Corporate Card is to be used for all credit card purchases of reimbursable business travel and entertainment expenses where the Corporate Card is accepted. The Corporate Card is a company asset. As such, it is to be used for business purposes only. See Separate Irby Corporate Card Policy for more detail." The policy also included rules relating to automobile expenses.

¶ 9    In his employment with Irby, the appellee received a base salary with some growth incentives. He was subject to annual reviews. The appellee, who was a high school graduate, reported a total income from salary of $83,174 in 2017 and $102,532 in 2018. The appellee explained that his base salary did not change, but his bonus incentives increased annually. In 2017, Irby had growth across the business, and the appellee hit a portion of his bonus that substantially increased his salary for the following year. In 2018, the appellee had four different metrics set for his bonus plan: sales revenue increase, gross margin increase, inventory discrepancies, and overall earnings before income and taxes (EBIT). The appellee met all four goals and expected a bonus of $40,000 to be paid in

3

March 2019. However, the appellee did not receive this bonus as he was terminated in January 2019.

¶ 10    The appellee testified that his job at Irby was important to him. He loved his job; it was what he had done for the past 24 years. He had worked all his life and had financial responsibilities to meet. During his employment at Irby, he never missed a maintenance or child support payment. He made consistent payments on a vehicle loan that his parents had extended to him after he had to file bankruptcy due to the parties' divorce. In anticipation of his continued employment with Irby and the bonus he was going to receive, the appellant gifted his parents $1200 so they could go on an extended vacation to Gulf Shores, Alabama. He also purchased a pontoon boat and planned to purchase a new home.

¶ 11    The appellant testified that in 2018, Irby had a change in management. He explained that the company frequently restructured according to growth and various factors. The company made personnel changes when its employees were not making their numbers.

¶ 12    On the morning of January 18, 2019, the appellee was informed via phone call that an audit had been done on the company fuel cards, it was determined that he used the card for his personal truck, and that day would be the last day of his employment. Prior to that phone call, the appellee did not believe that using the fuel card was a terminable offense. He explained that it was common practice to utilize the fuel card, as most employees traveled for business. The appellee's home was in Shelbyville, Illinois, and he would drive anywhere he could within six to eight hours. The fuel card was located in the branch office in Shelbyville, and employees who were in sales would utilize it. The appellee was

4

devastated and immediately offered to repay the funds he used, which amounted to about $1100.

¶ 13 The appellee testified that he received a notice of termination letter on January 18, 2019. Although the appellant entered into evidence the purported "Notice of Termination," the appellee denied that it was correct, as it was dated January 16, 2019, and his termination date was January 18, 2019. The appellee further adamantly denied that Irby's travel and entertainment policy submitted as the appellant's Exhibit F was the policy that he violated. The appellee explained that the travel and entertainment policy only pertained to company-issued credit cards utilized for meals, hotels, and customer entertainment. He testified that the actual company-issued card that he utilized for business-related travel fuel expenses was a "Fuelman" card, which was issued to the branches and commonly utilized by all employees who performed business travel.

¶ 14 The appellee stated that on the evening of his termination, he updated his resume and immediately began seeking alternative employment. He estimated that he applied for 40 to 50 jobs; he started keeping track shortly after his termination. Looking for new employment was difficult because the appellee lacks education beyond high school.

¶ 15 The appellee accepted a sales position from Snap-On Industrial, a $3.5 billion per year company that had an opening in southern Illinois. The appellee believes that as he works his way up in the company, his income will be similar to what he earned in prior years. He immediately commenced making child support payments after he found new employment.

5

¶ 16    The appellee filed an updated financial affidavit to support his motion to modify, which indicated that his estimated salary was $3309.84 per month (or approximately $39,708 per year).  At the time of the dissolution judgment, the appellee had an estimated salary of $91,754.01 per year or $7670 per month.  As such, his 2019 annual income was significantly less than what he made in 2016 when the original maintenance and child support orders were entered.

¶ 17    At the time of the motion to modify, the appellant had obtained full-time employment at Hydro-Gear earning $12.75 per hour, she worked 40 hours per week, and her salary was $2503.60 per month (or approximately $30,036 per year).  She was eligible for overtime pay at Hydro-Gear but did not receive overtime at CVS.  At the time the appellant filed her financial affidavit in response to the motion to modify, she was not receiving maintenance because the appellee's employment had already been terminated.  Thus, the adjusted gross income shown on her 2018 tax return ($44,295) was higher than her earnings from employment ($30,036) because she was receiving maintenance during 2018, and that counted towards her adjusted gross income.

¶ 18    During her testimony, appellee's counsel asked in detail about the appellant's bank statements.  The appellant was unable to locate proof that she paid the water bill, Ameren bill, her car payment, and garbage bill, all of which were set forth in her sworn financial affidavit.  With respect to the above bills, the appellant testified that she always had lights, water, and garbage removal.  She was "pretty sure" that she paid her water bill and car payment in cash.

¶ 19 The appellant testified that she moved into a residence at 507 N. Douglas St., Shelbyville, Illinois, in December 2017. The appellant testified that although her boyfriend, Adam Powers, was an over-the-road truck driver, he occasionally stayed with her at that address when he was not working. During a review of her bank statements, the appellant admitted that there were months where Powers deposited $350 into her checking account, and on the same days that those deposits were made, she withdrew money to pay her rent. The appellant also testified that Powers gave her money for her children, and that she would transfer funds from her account to Powers's when he needed money while traveling. The appellant confirmed that she had been in a dating relationship with Powers since August 2016. The appellant further testified that Powers took care of her children, attended the minor child's extracurricular activities, went out to eat and on vacations with her family, and they spent holidays together.

¶ 20 The appellant testified that she moved into her mother's residence in February 2019 because she could no longer afford the rent at her own residence since she had not been receiving maintenance payments. She testified that if her maintenance were restored, she could resume living independently.

¶ 21 The trial court ordered the parties to provide calculations regarding the figures to be adopted by the court. The appellee turned in calculations that showed that the appellant owed him thousands of dollars. The appellant asked the court that any modification of maintenance be limited to changes attributable to her increase in earnings, and that the court should impute the same income to the appellee as he had been earning at the time of the dissolution of marriage.

¶ 22    On December 31, 2019, the trial court entered its order on child support and maintenance. The court found that a substantial change in circumstances had occurred so as to require a modification of the maintenance order. The court declined to impute income to the appellee, finding that:

> "[T]his Court agrees with [the appellee] that while his actions (misusing the company credit card) was the cause of his termination, the [appellee] immediately repaid it in an attempt to keep that job, explained, with credibility, how that specific card was used and not included in the employer's policy that was admitted into evidence, that the card was subject to [the] other policy, that the card had been used by others in the field office for the same purpose, was not limited to termination as discipline, immediately began looking for work, and took a job in a similar field that could, in the long run, yield income similar to his income at Irby. There was no evidence or testimony that [the appellee] was underemployed nor was there any evidence or testimony that another job similar to the Irby job was available to [the appellee]."

The court also found that the appellee's "actions for termination were not done to avoid his support obligations based upon his credible testimony and his history of paying those support obligations was impeccable and not suggestive of someone who was trying to avoid his financial support obligations."

¶ 23    The trial court further found that the appellant's income had significantly increased since the initial maintenance and child support orders were entered, and that she had regular monetary contributions from her boyfriend that should be considered for purposes of calculating her income. Based on the appellee's change in employment and the appellant's increased income, the court decreased the monthly maintenance amount to $0. However, the court specifically disclaimed, "this is not a termination of maintenance." The court further stated that the maintenance amount was "subject to modification in the future pursuant to Illinois law."

8

¶ 24   Similarly, the trial court found that the same substantial change in circumstances justified modification of the appellee's child support obligation. Accordingly, the court modified the monthly child support amount to $427.39. The appellant appeals the court's orders as to maintenance and child support.

¶ 25                              II. ANALYSIS

¶ 26   The appellant argues that the trial court abused its discretion in finding that a substantial change in circumstances occurred that warranted modification of the appellee's maintenance and child support obligations. She asserts that the court erred in decreasing the maintenance and child support amounts based on the appellee's decreased income after he was terminated from his job. Relying on *In re Marriage of Imlay*, 251 Ill. App. 3d 138 (1993), the appellant contends that the court should have determined that because the appellee's termination was due to his misconduct, his employment change was voluntary and in bad faith. As such, the appellant maintains that the court should have imputed income to the appellee consistent with the income he earned at the time of the dissolution judgment.

¶ 27   Motions to modify child support and maintenance are governed by section 510 of the Illinois Marriage and Dissolution of Marriage Act. See 750 ILCS 5/510 (West 2018). Section 510 provides that "upon a showing of a substantial change in circumstances," an order for child support or maintenance may be modified. *Id.* § 510(a)(1), (a-5). A substantial change in circumstances warranting modification may occur upon: (1) an involuntary change or loss of employment, (2) a voluntary change of employment made in good faith, or (3) a change in the needs of the recipient spouse or the

9

ability of the payor spouse to make the payments. *In re Marriage of Brent*, 263 Ill. App. 3d 916, 922 (1994). When determining whether maintenance should be modified upon a finding of a substantial change in circumstances, the court must also consider factors such as the needs of each party, the duration of the marriage relative to the maintenance payments previously paid, the property awarded to each party under the judgment of dissolution, each party's present and future earning capacity, and the change in each party's income since the prior judgment or order from which a modification is being sought. 750 ILCS 5/504(a), 510(a-5) (West 2018).

¶ 28 The party seeking modification has the burden of proving a substantial change in circumstances, and the trial court has "wide latitude in determining whether a 'substantial change' has occurred." *In re Marriage of Saracco*, 2014 IL App (3d) 130741, ¶ 13. The decision to grant or deny a motion to modify a party's child support or maintenance obligation will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Carpenter*, 286 Ill. App. 3d 969, 973 (1997); *In re Marriage of Fink*, 275 Ill. App. 3d 960, 964 (1995). "[I]f the court's exercise of discretion has an evidentiary basis, then the reviewing court will consider the manifest weight of the evidence." *In re Marriage of Bates*, 212 Ill. 2d 489, 524 (2004). A judgment is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are arbitrary, unreasonable, or not based on the evidence. *In re Marriage of Matchen*, 372 Ill. App. 3d 937, 946 (2007).

¶ 29 Here, the trial court found a substantial change in circumstances occurred based on the appellee's termination from his employment at Irby. It further found that the appellee's

10

employment change was not voluntary, and that while it did result from his conduct, he immediately attempted to rectify the situation and keep his job by repaying the funds he used. The court found credible the appellee's testimony as to how the Fuelman card was used, that it was not included in the Irby travel and entertainment policy relied on by the appellant, that the card was subject to another policy, that it had been used by other employees in the field office for the same purpose, and that the discipline for misuse of the card was not limited to termination. See *In re Marriage of Mitteer*, 241 Ill. App. 3d 217, 226-27 (1993) ("It is the function of the trier of fact to determine the credibility of witnesses and the weight to be given their testimony.").

¶ 30    The evidence presented on the appellee's motion to modify supported the trial court's findings. The appellee testified that it was common practice to utilize the fuel card as most employees traveled for business. The appellee would drive anywhere he could within six to eight hours of his home. The fuel card was located in the branch office in Shelbyville, and employees who were in sales would utilize it. The appellee testified that he charged about $1100 to the card. Prior to the phone call notifying him of his termination, the appellee did not believe that using the fuel card was a terminable offense. He was devastated and immediately offered to repay the funds he used. Further, he adamantly denied that Irby's travel and entertainment policy relied on by the appellant was the policy that he violated. Similarly, the uncontradicted evidence indicated that the appellee loved his job, it was important to him, and it was what he had done for the past 24 years. He had been successful at his job, with his income increasing each year because he received substantial bonuses. He made six figures in 2018.

11

¶ 31 In this vein, we think the appellant's reliance on *Imlay*, where a request to modify maintenance was considered in the context of a *voluntary* change in employment, is misplaced. There, the trial court denied a petition to modify maintenance after it determined that the payor spouse's deliberate actions caused his termination and, therefore, that he could not meet the burden of establishing that the employment change was made in good faith. *Imlay*, 251 Ill. App. 3d at 142 (noting that "[a] party who *voluntarily* changes employment resulting in a reduced income and seeks to modify a support obligation must show the employment change was made in good faith" (emphasis added)). Here, the appellee's employment change was not voluntary. As such, we think that this record more closely resembles the following three cases where employment changes warranted support modifications.

¶ 32 First, in *In re Marriage of Barnard*, 283 Ill. App. 3d 366 (1996), the payor spouse, an attorney, petitioned to reduce his child support obligation. The payor spouse had been employed with his law firm for 20 years, was the firm's chief trial lawyer, and had earned a salary of $191,000. For various reasons, the payor spouse felt forced to leave the firm. He established his own law practice but, to supplement his income, he accepted part-time work with the Adams County State's Attorney's office for $30,000 per year. He petitioned the trial court to reduce his support in light of his greatly reduced earnings. The court found that the payor spouse left his law firm in good faith (he was essentially forced to resign), that the change resulted in a substantial change in circumstances, and that child support would be temporarily reduced for a period of six months with the accrued balance to be paid at a later date. The appellate court affirmed, finding that, although the payor spouse

made the job change expecting to earn less than he had at the firm, the choice to leave his former employer was motivated by concerns of job security, there was no evidence that the change was motivated by bad faith, and he had made considerable efforts to obtain other employment. *Id*. at 372. Given the circumstances surrounding his leaving the firm, the court agreed that he "was not required to wait until his change of employment became an involuntary one to justify a reduction" in support. *Id*.

¶ 33 Next, in *In re Marriage of Gosney*, 394 Ill. App. 3d 1073 (2009), the trial court denied a petition to modify child support, but the appellate court reversed because the payor spouse was involuntarily unemployed and, within months of his termination, found another position in the financial management industry (moving from a salary of $755,497 in 2006 to $110,000 in 2008). The appellate court disagreed with the trial court's finding that the payor spouse should earn $350,000, noting that "he did not willingly decide to leave his job and then remain unemployed" and that "nothing in the record suggests an attempt to evade a support obligation." *Id*. at 1078. The appellate court noted that, immediately after he lost his job, the payor spouse began searching for new employment and continued to make support payments. *Id*. Further, the court found there was no evidence of "an unreasonable failure to take advantage of an employment opportunity," or that he had been offered a position that would have paid him $350,000. *Id*. "At the time of trial, [the payor spouse] had no employment opportunity that would have produced an income in the range imputed by the trial court. Indeed, there is no evidence that a job of that income was available to someone of [his] experience in 2008." *Id*.

13

¶ 34    Finally, in *In re Marriage of Lavelle*, 206 Ill. App. 3d 607 (1990), the appellate court reversed the trial court's denial of a petition to modify child support.  There, the payor spouse, at the time of the original judgment, was self-employed as the owner of an electronics store.  The store went bankrupt.  After filing for bankruptcy, the payor spouse enlisted a headhunting agency to find him employment in the electronics field, but those efforts proved fruitless.  While unemployed, the payor spouse became licensed as a stockbroker and became employed at an investment firm with his entire salary based on commission.  He testified that he expected his income at the firm would increase.  The appellate court disagreed with the recipient spouse's argument that, while the bankruptcy was unfortunate, the payor spouse voluntarily changed careers and should instead have obtained a job in the electronics field for which he was qualified.  The court concluded that, where the loss of employment was involuntary and where the payor spouse's efforts to obtain a position in the electronics field failed, even with an agency's assistance, he had demonstrated that a substantial change in circumstances warranted a reduction or modification of his support obligations.  *Id*. at 611-12.  Therefore, the appellate court found that the trial court had abused its discretion in denying the petition to modify.  *Id*. at 612.

¶ 35    The aforementioned cases persuade us that, here, the trial court's findings that the appellee did not voluntary change his employment, is not underemployed, and the actions underlying his termination were not done for the purpose of avoiding his maintenance or child support obligations are not contrary to the manifest weight of the evidence and, therefore, that it did not abuse its discretion in concluding that modification should be granted.  As in *Barnard*, *Gosney*, and *Lavelle*, the record here reflects that the appellee's

14

job change was forced, not voluntary, he actively sought reemployment on his own, he found appropriate new employment for his education level, he expects to make a salary comparable to what he was previously earning, he made support payments up until his termination and resumed child support payments as soon as he found new employment, and there was no evidence that he was offered, but turned down, any higher paying positions.

¶ 36    Specifically, and in accordance with the foregoing cases, we agree with the trial court's assessment that the appellee immediately began looking for work and took a job in a similar field that he believed would eventually yield an income comparable to what he made at Irby.  Moreover, the court found that there was no evidence indicating that the appellee was underemployed or that he had turned down employment with a salary that was closer to what he previously made.  The uncontradicted evidence showed that the appellee updated his resume and began seeking alternative employment immediately after his termination.  He estimated that he applied for 40 to 50 jobs but looking for new employment was difficult because he lacks education beyond high school.  However, he was offered and accepted a sales position from Snap-On Industrial.  The appellee believes that as he works his way up in the company, his income will be similar to what he earned in prior years.[1]  He also immediately commenced making child support payments after he found new employment.

---

[1]We note that if the appellee's belief is true, and his income level rises to that of what he made prior to his termination, there is nothing stopping the appellant from filing a motion to modify the appellee's maintenance and child support obligations to reflect such increased income.

¶ 37 Although the appellant spent a considerable amount of argument on the issue of whether the appellee's job change was done in good faith, we note that consideration of good faith appears relevant to voluntary employment changes, not involuntary employment changes. See, *e.g.*, *Brent*, 263 Ill. App. 3d at 922 (listing as separate circumstances warranting modification an involuntary job change versus a voluntary job change made in good faith). Nevertheless, we agree with the trial court's finding that the appellee's "actions for termination were not done to avoid his support obligations based upon his credible testimony and his history of paying those support obligations was impeccable and not suggestive of someone who was trying to avoid his financial support obligations." See *Mitteer*, 241 Ill. App. 3d at 226-27 ("It is the function of the trier of fact to determine the credibility of witnesses and the weight to be given their testimony."). The uncontradicted evidence revealed that prior to his termination, the appellee had worked all his life, consistently paid maintenance and child support, and kept up with other financial responsibilities.

¶ 38 In light of the foregoing, we find that the appellee's loss of employment was involuntary and constituted a substantial change in circumstances. The trial court did not abuse its discretion in granting modification of his maintenance and child support obligations because the reasons supporting its decision were not against the manifest weight of the evidence. Therefore, we affirm the court's modification of the maintenance and child support amounts.

¶ 39                                III. CONCLUSION

¶ 40 The order of the circuit court of Shelby County is hereby affirmed.

16

¶ 41    Affirmed.